FARLEY v. THE CHARLESTON BASKET AND VENEER CO.

1. PLEADING—CAUSE OF ACTION—MASTER AND SERVANT.—Allegations charging a master with negligence in providing safe appliances and a safe place to stand while working a machine state only one cause of action.

2. EVIDENCE—SUBSEQUENT PRECAUTIONS—WAIVER.—Where a defendant brings out evidence as to subsequent precautions, he waives the right to object to the same sort of evidence by the other side. *Divided Court.*

3. NONSUIT properly refused.

4. CONTRIBUTORY NEGLIGENCE—MASTER AND SERVANT.—Whether servant is guilty of contributory negligence, by remaining in employ of master after knowledge of defect in appliances, is question for jury. Following *Lazure* v. *Graniteville Mfg. Co.,* 18 S. C., 280.

5. CHARGE.—Instructions giving defendant benefit of what is only available as a defense, cannot be objected to by him, even though no such issue be made in the case.

6. CONTRIBUTORY NEGLIGENCE.—Charge upon contributory negligence not objectionable. Rule stated as to recovery in cases of contributory negligence.

7. CHARGE not on the facts.

8. CONTRIBUTORY NEGLIGENCE—MASTER AND SERVANT—PROXIMATE CAUSE.—Contributory negligence on part of servant, if not of such

degree as to be the proximate cause of the injury, will not free master from liability, if his negligence were the proximate and immediate cause of the injury.

9. CHARGE.—Illustration complained of intended merely to show importance of determining the proximate cause, and did not mislead jury.

10. DAMAGES—MEDICAL SERVICES.—Expenses for medical services may be considered by the jury in estimating damages for personal injury.

11. PETITION FOR REHEARING refused.

Before BENET, J., Charleston, April, 1896.    Affirmed.

Action by Chas. H. Farley against the Charleston Basket and Veneer Company, on the following pleadings:

The plaintiff above named, complaining of the defendant above named, alleges:

1. That the defendant was, at the times hereinafter mentioned, and is now, a corporation created by and under the laws of the State of South Carolina.

2. That, at the times hereinafter mentioned, the defendant was carrying on the business of manufacturing barrels and half barrels, baskets and boxes, at its steam manufactory at Marshall's wharf, in the city of Charleston, and the plaintiff was in the employ of the said defendant as a workman in the machinery department, engaged in working at a "rounder," a machine used for turning bottoms for half barrels, which rounder was run by the belting attached to the shafting in such machinery department; and on the 23d day of September, 1895, while the plaintiff was in the performance of his duty as such employee, engaged at said machine in turning bottoms for half barrels, and while the machinery of said manufactory was running, the belting on the shafting attached to said machine broke and flew off, and struck and wounded the plaintiff in his face, and an eye of plaintiff was put out and destroyed, and thereafter, for a long time, this plaintiff suffered great bodily pain, and is now permanently injured and disabled, and the sight of his other eye greatly weakened and threatened, and the plaintiff thereby prevented from pursuing any active calling, and unable to pursue his avocation.

3. That the said injuries, as aforesaid, were caused to the plaintiff by the negligence, fault, and carelessness of the defendant in failing to provide proper and safe and suitable belting, and in failing to keep the same in proper repair and safe working order, and in failing to provide and furnish safe machinery, appliances, guards, and protectors, and in providing and using unsafe, defective, and insecure machinery and appliances, and in failing to provide a safe place for plaintiff to stand and work while engaged in the performance of his said duties as such employee, as aforesaid, by reason of all and each of which negligent acts of defendant, as aforesaid, the plaintiff, Charles H. Farley, was wounded and injured, as aforesaid.

4. That the injuries aforesaid of the plaintiff were caused by the wrongful acts, fault, default, and negligence of the defendants in the manner before mentioned, whereby the plaintiff has suffered great and grievous and long continued bodily pain, is permanently injured in his person for life, and prevented from pursuing his usual calling or any active calling, and otherwise hurt and injured to his damage $10,000.

Wherefore plaintiff demands judgment against the defendant for the sum of $10,000 and costs of this action.

The defendant above named, answering the complaint herein, alleges:

I. This defendant admits that it was at the time alleged in the complaint, and still is, a corporation carrying on business in the city of Charleston.

II. Defendant denies the allegations of the second paragraph, except as hereinafter admitted. Defendant admits that at the times mentioned in the complaint it was carrying on the business of manufacturing barrels and half barrels, baskets and boxes, at its steam manufactory at Marshall's wharf, in the city of Charleston, and that plaintiff was in the employ of the said defendant as a workman in the machinery department, engaged in working at a "rounder"—

a machine used for turning bottoms for half barrels, which rounder was run by the belting attached to the shafting in such machinery department.   That on the 23d of September, 1895, while plaintiff was standing in front of said machine, the wire uniting the parts of the belt gave way, thus causing the belting to fly off, striking the plaintiff in the face, but as to the extent of plaintiff's injuries this defendant has no knowledge or information sufficient to form a belief; but alleges that it was a part of the plaintiff's duty to take care of, superintend and run said rounder, including in his duties the lacing of the belt referred to, and seeing that the same was kept properly laced with proper material, and that he was wholly in charge of the preparation for running and the running of said rounder.

III.  Defendant denies each and every allegation of the third and fourth paragraphs of the complaint.

IV.  And for a further defense the defendant alleges: That whatever injuries this plaintiff received were due to his own carelessness and negligence.   This defendant alleges that it was a part of the plaintiff's duty to superintend, repair, prepare, use and constantly examine the rounder, together with the belts and wire lacing connected therewith, and to see that the same, when in use and not in use, were at all times in proper repair and condition, and that a part of his duty was to have said machine under constant control and supervision; and that the defendant at all times furnished the plaintiff with sufficient and suitable supplies of reasonable and proper material for the operation of said rounder, including the rounder itself, the belting, lacing and other machinery necessarily connected therewith; and this defendant, further answering, denies all negligence on its part.

Wherefore defendant prays judgment that the complaint herein be dismissed with costs.

Jury rendered verdict for $4,850.   Judge granted new trial, *nisi*, unless plaintiff would remit $1,350, which was done.   Defendant appeals.

*Messrs. Fitzsimons & Moffatt*, for appellant, cite: *Complaint states two causes of action:* 47 S. C., 211; 43 S. C., 224; 42 S. C., 114; 41 S. C., 415; 38 S. C., 485; 37 S. C., 55; 24 S. C., 42; 15 S. C., 10. *Error to admit testimony as to subsequent precautions:* 56 N. Y., 1; 68 N. Y., 547; 73 N. Y., 468; 108 N. Y., 151; 51 Conn., 524; 30 Minn., 465; 59 Ia., 581; 14 S. E. R., 51; 144 U. S., 202; 44 N. W. R., 1095; 28 N. E. R., 10; 13 N. W. R., 735; 16 *Id.*, 358. *Nonsuit should have been granted:* 19 S. C., 20, 196, 510; 21 S. C., 35, 101, 466, 541; 22 S. C., 557; 23 S. C., 531; 26 S. C., 490; 28 S. C., 157; 29 S. C., 96; 31 S. C., 342; 32 S. C., 592; 33 S. C., 198; 35 S. C., 439; 41 S. C., 388; 46 S. C., 15; 38 S. C., 510; 23 S. E. R., 713; 37 P., 122; 42 Pac., 952; 36 N. R., 682; 142 N. Y., 31; 30 S. C., 613; 20 S. C., 222; 30 S. C., 229; 4 Rich., 329; 21 S. E. R., 707. *Error to submit issue to jury not made in case:* 15 S. C., 95; 46 S. C., 203; 25 S. E. R., 116; 5 *Id.*, 284; 10 *Id.*, 910; 18 *Id.*, 81; 16 *Id.*, 845. *Error in charging contributory negligence:* 23 Pa. St., 147; 20 S. C., 221; 5 C. B. (N. S.), 573; 10 Mee. & W., 546; 53 Am. R., 616; 8 S. E. R., 732; 24 Vt., 487; 29 Md., 420; 56 How. Pr., 158; 12 S. E. R., 946; 85 N. C., 310; 55 Am. D., 666; 144 U. S., 408; 139 U. S., 551; 2 S. W. R., 424; 3 *Id.*, 848; 19 S. C., 28; 15 S. C., 443; 23 S. C., 542; 101 Mass., 465; 24 Md., 84; 11 Red. A. Ry. C., 500; 95 U. S., 443. *Charge upon facts:* 23 S. C., 210; 17 S. C., 162; 17 S. C., 71; 38 S. C., 31; 31 S. C., 235; 47 S. C., 488; 20 Ia., 338; 39 *Id.*, 615. *Error to set up standard of comparison for jury:* 30 S. C., 228; 101 Mass., 466.

*Messrs. Bryan & Bryan*, contra, cite: *One cause of action stated:* 41 S. C., 391. *Testimony as to subsequent precautions properly admitted:* 17 S. C., 578; 20 S. C., 508; 24 S. C., 592. *Nonsuit properly refused:* 142 N. Y., 31; 18 S. C., 281; 8 Allen, 441; 150 U. S., 359. *Rule as to contributory negligence correctly stated by trial Judge:* 18 S. C., 281; 8 Allen, 441; 130 U. S., 350; 150 U. S., 359; 21 S. C.,.

495; 2 McM., 405; 8 Rich., 127; 15 Rich., 201; 15 S. C., 452; 19 S. C., 29; 24 S. C., 370; 38 S. C., 282; 25 S. E. R., 82; 10 Mee. & W., 545; 144 U. S., 429; 139 U. S., 559.

The opinion was filed November 12, 1897, but remittitur stayed until December 4, 1897. The opinion of the Court was delivered by

MR. JUSTICE GARY. · · This action was commenced on the 28th of December, 1895, and tried before his Honor, Judge Benet, and a jury, at the April, 1896, term of the Court for Charleston County. The jury rendered a verdict in favor of the plaintiff for $4,850. The defendant moved for a new trial upon the minutes of the Court. The presiding Judge made an order granting a new trial, unless the plaintiff would remit from the amount of the verdict the sum of $1,350 within ten days from the date of the order, which was done. The complaint and answer will be set out in the report of the case.

The appellant's first exception alleges error on the part of the presiding Judge as follows: I. "In refusing defendant's motion to elect upon which cause of action, stated in the complaint, he will proceed to trial, several causes of action being blended in one statement, to wit: (1) Whether plaintiff will proceed to trial upon the cause of action stating that defendant was negligent in failing to provide and furnish safe machinery, appliances, guards, and protectors, and in providing and using unsafe, defective, and insecure machinery and appliances; or upon the cause of action stating that the defendant was negligent. (2) In failing to provide a safe place for plaintiff to stand and work, while engaged in the performance of his duties as such employee." Upon the call of the case the defendant's attorneys, pursuant to notice, made a motion for an order requiring plaintiff to elect upon which of said alleged causes of action he would proceed to trial. After hearing argument upon said motion, the Court ruled as follows: "Unless the testimony throws more light upon this question, as to whe-

ther or not the place where plaintiff had to stand would be something separate and distinct from the appliances and machinery, I shall overrule your motion. The allegation, as it appears in the third paragraph, charges only one cause of action; it includes several statements, viz: the failure to furnish safe belting, failure to provide safe place to stand, &c., but I cannot say that that is stating more than one cause of action. In Ruff's case, where the plaintiff alleged a defective crossing, and negligence in running the train, those are two very distinct facts, either of which would have been a cause of action, and the Supreme Court said there was no necessary connection between the unsafe crossing and the negligent running of the train; but I cannot see that there is no necessary connection between the appliances and the place the plaintiff had to stand." A place to stand was a part of the appliances for operating the rounder, and there was such connection between them that one would have been useless without the other. In other words, each was necessarily dependent upon the other in accomplishing the purpose for which each was intended. This exception is, therefore, overruled.

The second exception alleges error as follows: II. "In holding that the allegations of the third paragraph charge only one cause of action, and in refusing to hold that there is no necessary connection between the appliances and the place the plaintiff had to stand." This exception is disposed of by what was said in considering the first exception, and is also overruled.

The third exception complains of error as follows: III. "In admitting, against the objection of defendant's counsel, testimony as to subsequent precautions taken by the defendant, after the accident, to prevent a recurrence of similar accidents, as follows, to wit: Q. (By Mr. Bryan.) In response to Mr. Fitzsimons' inquiry of the relative danger of these two machines, I ask the witness this question: Have they not put a protection in front of this machine to protect the operatives from the danger

of this rounder, and, as a matter of fact, have not put pro-
tection at any other machine throughout the factory?
(Question objected to by Mr. Fitzsimons. Objection over-
ruled. Ruling excepted to.)   A. Yes, sir.   Q. And is it
not a fact that this protection they have put since the
accident is the only protection they have put in that factory
since the accident?   A. Yes, sir."

Immediately preceding the foregoing interrogations and
answers, the following took place upon the examination of
the plaintiff: "Redirect examination: Q. (By Mr. Bryan.)
I understand you to say that as long as the machine was
working, and you were standing in your position, you had
protection?   A. Yes, sir.   Q. Now, what part of the ma-
chine did you go to in order to take the piece out?   A. To
the front of the machine.   Q. When you turned and faced
the machine and moved to get that piece out, was there
any protection there?   A. No, sir.   Q. Could you get that
piece out without facing the machine?   A. No, sir.   Re-
cross-examination: Q. (By Mr. Fitzsimons.) Protection
from what?   A. Something in front of you to protect any-
thing that broke loose from hitting you.   Q. You mean
protection from belting?   A. Yes, in that particular case.
Q. Wasn't the belting where you were working the said
machine as near to you as in this machine?   A. No, sir;
nothing like."

Upon the examination of Mr. Benjamin, a witness for
the defendant, the following took place, when examined by
Mr. Fitzsimons: "Q. Have you since made any changes in
that machine to guard against a recurrence of the accident?
A. Yes.   Q. Why did you do it?   A. To avoid any acci-
dent that might occur in the future.   Q. What was the
change you made?   A. We placed a shield up in front of
the belt.   Q. That would prevent a recurrence of a similar
accident now?   A. Yes."

There was other testimony of defendant's witnesses to
the same effect.  The defendant also introduced in evidence
a photograph of the rounder, taken subsequent to the acci-

dent. Whatever right the defendant had to object to testimony in behalf of the plaintiff, as to subsequent precautions, was waived by the introduction in its behalf of the testimony just mentioned. It would be unjust to the plaintiff to allow the jury to consider the defendant's testimony as to precautions made subsequent to the accident and to exclude from their consideration testimony in behalf of the plaintiff as to such precautions. Furthermore, even if there was error in admitting testimony, on the part of the plaintiff, as to the fact that precautions were made by the defendant subsequent to the accident, when the defendant established such fact by its witnesses, it would be harmless error. This exception is overruled.

The fourth exception complains of error as follows: IV. "In refusing defendant's motion for nonsuit made upon the following grounds: (1) Because there was no testimony as to the material allegations of the complaint. (2) Because there is no testimony that the injury received is the result of negligence of defendant. (3) Because there is no testimony that the injury received is the result of negligence testified to; nor is there any testimony that the injury received is the result of the negligence alleged in the complaint. (4) Because the testimony is that the injury received is the result of a risk incident to the employment. (5) Because the testimony is that plaintiff knew, and had the means of knowing, of the alleged unsafe place and defective appliances, and voluntarily assumed all risks incident thereto. (6) Because the injury received is shown by the testimony to be the result of an accident, without fault on the part of the defendant."

When the plaintiff was on the stand, amongst other things, he testified as follows: "Q. (By Mr. Bryan.) Tell the Court and jury just what you were doing? A. I was turning out bottoms for half barrels. That morning the belting broke about half-past 8 o'clock, and I repaired it; about 9, or a little after, I discovered the belting pulling apart, that is, where the wire had cut through the eyelets of the belt,

and leaving the under side running open; I stopped the rounder and called Mr. Cameron's attention to it, and he punched two holes back of the two that had cut through, and laced those two holes with a leather lacing and the remainder with copper wire lacing.    Q. Who was Mr. Cameron? A. The general foreman.    He made the remark to me, 'Farley, now you are all right, go ahead.'    I ran the rounder for about an hour, I presume.    While the machinery was laboring we were protected by the side of the rounder being walled up, and we stood behind the rounder, because there was a danger of its throwing pieces of wood.    I had cut a bottom and I stepped in front of the machine, and kicked the clapboard that held the bottom loose, and took my file to take out the bottom; as I reached for my file the belting broke and struck me in the face, putting two gashes across my nose, and striking me in the eye and cutting my eye out.    Q. When the knives are cutting, you say there is a protection for the person working?    A. Yes, while the machine is laboring.    Q. When you go around to take out the bottom have you any protection?    A. No, sir, no protection at that time.    C. How long had you been working at this machine?    A. A day and a half. * * * Q. What kind of lacing for the belt was furnished you in that factory for the machines worked by you previously?    A. I used staples mostly, and when I did not use staples I used a leather lacing.    Q. When you came to this rounder what kind of lacing did you find upon the belt?    A. The belt was laced out and out with copper wire, and quite a bunch of copper wire was hanging by the side of the rounder, and was used for lacing the belt.    Q. You had worked in machine shops before?    A. I had worked around machines before some. Q. Had you ever seen copper wire used for lacing before? A. No, sir. * * * Q. Were you aware that there was any danger in the use of the copper wire?    A. None whatever; because I thought that as they were practical men and I a comparatively green man, that they knew all about it, and knew it to be safe. * * * Q. How far were you when you

went around to take the bottom out with the file, and how far were you from the belting? A. From eighteen inches to two feet. Cross-examination: Q. (By Mr. Fitzsimons.) You say you laced that belting that very morning? A. Yes, sir. Q. You made no objection to the wire lacing? A. No, sir. Q. You knew it was wire lacing? A. Yes, sir. * * * Q. Is that the only rounder in that establishment? A. No, sir; they have two more, I believe. Q. Have you ever worked at the others? A. One of them. It was not like this one; it was entirely different. There was a kind of protection to that one. It stood on the floor, with cross-bars across the frame to make the frame substantial, and the belting, before it could hit you, would hit one of those cross pieces and break the force of the blow. Redirect examination: Q. (By Mr. Bryan.) You say you made no objection to the copper wire? A. Yes, sir. Q. Did you know the danger of copper wire? A. No, sir. Q. Did they inform you of it? A. No, sir; they were men of practical experience, and I supposed that they would not furnish me with anything unless it was a proper lacing."

J. C. Boesch, a witness for the plaintiff, *inter alia*, testified as follows: "Q. (By Mr. Bryan.) What is your trade? A. Coppersmith. * * * Q. In your trade as a coppersmith, are you familiar with the nature and characteristics of copper and copper wire? A. Yes. Q. What is the nature of copper wire before use? A. It is soft and pliable. Q. What is the effect of friction on copper wire? A. It makes it hard and brittle. Q. Have you seen the operation of machine shops in your daily work? A. I have not worked in them, but I have passed through them and seen them working. Q. Do you know the ordinary friction of belting passing over pulleys? A. Yes. Q. What would be the effect of friction of that kind upon a piece of copper wire running over it? A. It would be the same as hammering it—it would become hard and brittle; it might do it in two minutes, or it might not do it in several hours. Q. In going over a pulley, what effect would that have upon a piece of

copper lacing; what effect would the motion have?　A. It would have the effect of bending it and straightening it alternately.　Q. What effect would that straightening and bending have on a piece of copper wire made hard and brittle by friction?　A. It would break.　Q. Would it break suddenly or gradually?　A. It would break suddenly; it would break short off. * * *　Redirect examination: Q. (By Mr. Bryan.) You know that copper wire put in a belt ductile and malleable would, under the friction, become hard and brittle, and be liable to break without warning, and to that extent it would be dangerous?　A. Yes."

The plaintiff introduced in evidence a piece which was taken out of the belt the morning of the injury, when the belt first broke.　It was the duty of the defendant to provide safe and suitable appliances, &c., for the operation of the rounder by the plaintiff, and if it failed to discharge this duty, then there was evidence of negligence.　It will be seen that there was testimony tending to show that the copper wire by which the belt was laced broke and caused the injury, and was unsafe and defective for such purpose. Also, that the failure to provide a protector for the rounder rendered its operation dangerous, and that the defendant showed its knowledge of the danger in such cases by providing a protector for another rounder in its establishment. There is testimony, also, tending to show that the plaintiff's injury was the direct and proximate result of said negligence.

It is urged, however, that even if there was negligence on the part of the defendant, and the appliances, &c., were dangerous, the nonsuit should have been granted, because the plaintiff was aware of the danger.　There is testimony tending to show that the plaintiff was not aware of the danger from the use of copper wire for lacing belts; but, even if he had been aware of the danger, it does not follow that the nonsuit should have been granted. In the case of *Lazure* v. *Graniteville Manufacturing Co.*, 18 S. C., 280, Chief Justice McIver (then Associate Justice), in delivering the opinion of the Court, says: "The second

ground of appeal alleges that the Circuit Judge erred in not charging the fourth request submitted, which is in these words: 'That even if the jury find that there was a defect in the tramway, known to the company, yet if they find that the plaintiff also knew of said defect, or by the exercise of ordinary care and diligence could have known of it, and still voluntarily continued in the employment of the company, he can not recover, and the verdict must be for the defendant.' We think it very clear that the proposition, or, rather, propositions (for there are two of them), contained in this request are not well founded. It does not follow necessarily that a servant is guilty of contributory negligence because he remains in the service of his master after he has knowledge of defect in the machinery or appliances with which he is furnished to perform his work, but it is a question of fact for the jury to determine under all the circumstances of each particular case. Wood on Master and Servant, sec. 357; citing *Snow* v. *Housatonic Railroad Company*, 8 Allen, 441. It was, therefore, no error to refuse to charge, as matter of law, that if the plaintiff knew of the defect in the tramway, and still continued in the employment of the company, he could not recover." It is true, this language was used in regard to a request, but the principle applies with even greater force upon a motion for nonsuit. This exception is overruled.

The fifth exception complains of error as follows: V. "In submitting to the jury in his charge, as a question in the case, an issue not made either in the pleadings or the testimony, to wit: in charging the jury that they will inquire whether the injury which plaintiff suffered was caused by defendant company ordering him, by their agents or officers, to do a piece of work which they knew, or had reasonable grounds for knowing, was dangerous because of the condition of the machinery, the plaintiff, Farley, himself not being apprised of the danger." In his charge, his Honor says: "You will inquire whether this injury which the plaintiff, Farley, suffered was caused by the

negligence or carelessness of the defendant company, or its agents or officers.   If so, was it caused by the failure to furnish safe and suitable machinery, or to furnish him with a safe place to work.   Or was it caused by their ordering him, by their agents or officers, to do a piece of work which they knew, or had reasonable grounds for knowing, was dangerous because of the condition of the machinery, the plaintiff, Farley, himself not being apprised of the danger." There was testimony tending to show that the plaintiff was not aware that there was any danger in the use of the copper wire at the time of the injury.   Even if no issue was made by the pleadings as to the defendant's knowledge of the defective appliances, still it has no right to complain of the charge, as it gave the defendant the benefit of that which is only available as a defense.   *Branch* v. *Ry. Co.*, 35 S. C., 405.   This exception is overruled.

The sixth exception complains of error as follows: VI. "In charging the law of contributory negligence to be as requested by plaintiff's tenth request, viz: 'the jury are instructed that, as a matter of law, it is not true that the plaintiff could not recover, if he knew of defect of rounder having no guard and still continued in employment of company, for the reason that the law places the duty upon the company to exercise due care and diligence to ascertain whether the machinery and appliances furnished the plaintiff were suitable and proper, and for further reason that if the defendant company might by the exercise of reasonable care and prudence have avoided the consequences of plaintiff's negligence, the plaintiff might still recover;' said charge is not only an erroneous statement of the law of contributory negligence, but, it is respectfully submitted, is a charge upon the facts, in that it assumes as a fact, and so charges the jury, that the rounder having no guard is a defect."   The exception contains only a portion of the tenth request to charge.   The request to charge contains the following words immediately preceding those set out in the exception, to wit: "The jury are further in-

structed, that it does not necssarily follow that a servant is guilty of contributory negligence because he remains in the service of his employers after he has knowledge of defect in machinery or appliances with which he is furnished to perform his work; but it is a matter of fact for the jury to determine under all the circumstances of this case. On the contrary * * *" In commenting on the tenth request, his Honor said: "I so charge you. This request means this, that when the employee's want of care is the immediate and proximate cause of the injury, the master or corporation cannot be held liable, even though the master or corporation may have been negligent; but if the testimony shows that the master or corporation, by the exercise of reasonable care and prudence, might have avoided the consequences of the injured person's carelessness, then the contributory negligence of the employee will not of itself defeat the action, and relieve the master or corporation from liability. And the jury must determine whether or not the plaintiff's negligence, or the defendant's negligence, was the immediate or proximate cause of the injury, and whether or not the consequences of the plaintiff's carelessness, if such there was, might have been avoided by the exercise of reasonable care and prudence by the defendant. You can well imagine that a man might carelessly cross, or attempt to cross, a crowded thoroughfare, and while doing so, carelessly, might be run over and injured by some person driving a carriage. In such a case, if it came into court, the jury would have to determine whether the injury was proximately caused by his own carelessness or by the reckless driving of the carriage. Because, even though he might have been reckless, still, if the injury could have been avoided by the careful driving of the carriage, then the proximate cause of the injury would be the reckless driving of the carriage, and the contributory negligence in that case would not defeat the action. As was held in a case where the evidence showed that a wharfinger was standing carelessly in a position of danger, and was injured. It was also

shown, on the other hand, that the immediate cause of his injury was not his being in a dangerous place carelessly, but that it would have been avoided if the steamboat had not been driven against the wharf so carelessly as to cause danger. With these explanations I charge you the tenth request." If the plaintiff was guilty of negligence to such a degree that it was the proximate and immediate cause of the injury, even if there was also negligence on the part of the defendant, he would not be entitled to a recovery. On the other hand, if the defendant was guilty of such negligence as was the proximate and immediate cause of the injury, the plaintiff would be entitled to a recovery, even though he was also guilty of negligence, provided his negligence was not a proximate and immediate cause of the injury. If the plaintiff was guilty of negligence, which was not the proximate cause of the injury, and the proximate cause of the injury was the failure of the defendant to exercise reasonable care and prudence to avoid the injury, the plaintiff would be entitled to a recovery. When the request is considered in connection with his Honor's explanation, it will be seen that he substantially charged in conformity with the principles just stated. We do not construe his Honor's charge as invading the province of the jury by charging upon the facts. It was his intention, as appears from a consideration of his entire charge, to leave it to the jury to determine whether the rounder having no guard was a defect. This exception is overruled.

The seventh exception complains of error as follows: VII. "In further charging the law of contributory negligence in this State to be as follows: 'That when the employee's want of care is the immediate and proximate cause of the injury, the master or corporation can not be held liable, even though the master or corporation may have been negligent; but if the testimony shows that the master or corporation, by the exercise of ordinary care and prudence, might have avoided the consequences of the injured person's carelessness, then the contributory negligence of the

employee will not of itself defeat the action and relieve the master or corporation from liability. And the jury must determine whether or not the consequences of plaintiff's negligence or defendant's negligence was the immediate or proximate cause of the injury, and whether or not the consequences of plaintiff's carelessness, if such there was, might have been avoided by the exercise of reasonable care and prudence by the defendant.'" This exception is disposed of by what was said in considering the sixth exception, and is overruled.

The eighth exception complains of error as follows: VIII. "In modifying and qualifying defendant's fourth request to charge, to wit: '4. If the jury believe that the injury received was the result, in whole or in part, of the imprudent, careless or negligent act of Charles H. Farley, their verdict should be for the defendant company,' by adding the words: 'I charge you that, in the light of the previous charge I made, that even though there may be evidence of negligence on the part of Farley, yet if the injury sustained might have been avoided by the use of reasonable care by the company, then, even though the plaintiff may have been guilty of some negligence himself, the company could not, on that account alone, be freed from liability.'" When this exception is considered in connection with the whole charge, it will be seen that his Honor meant to charge the jury that, even if there was negligence on the part of the plaintiff, but not of a degree to be a proximate cause of the injury, the defendant can not be freed from liability if the failure of the company to exercise reasonable care to avoid the injury was its proximate and immediate cause. Thus construed, there was no error, and this exception is overruled.

The ninth exception complains of error as follows: IX. "In setting up a standard to the jury with which they were to compare the case in hand, and by which they were to determine the degree of contributory negligence of which plaintiff could be guilty and yet recover from de-

fendant, thus invading the province of the jury by presenting to their minds the state of facts mentioned as a standard for their government in determining the question whether or not contributory negligence by plaintiff was present in the case before them by saying to the jury: 'You can well imagine that a man might carelessly cross, or attempt to cross, a crowded thoroughfare, and, while doing so carelessly, he might be run over and injured by some one driving a carriage. In such a case, if it came into court, the jury would have to determine whether the injury was proximately caused by his own carelessness or by the reckless driving of the carriage. Because, even though he might have been careless, still, if the injury could have been avoided by the careful driving of the carriage, then the proximate cause of the injury would be the reckless driving of the carriage, and the contributory negligence in that case would not defeat the action. As was held in a case where the evidence showed that a wharfinger was standing carelessly in a position of danger and was injured. It was also shown, on the other hand, that the immediate cause of his injury was not his being in a dangerous place carelessly, but that it would have been avoided if the steamboat had not been driven against the wharf so carelessly as to cause danger.'" This language was used by the presiding Judge in commenting on the plaintiff's tenth request to charge, and was intended merely as an illustration. When, however, it is considered in connection with the other remarks of his Honor, it will be seen that his desire was to impress upon the minds of the jury the importance of determining what was the *proximate* cause of the injury, and we are satisfied that the jury was not in any manner misled by this language. This exception is overruled.

The tenth exception complains of error as follows: "X. In refusing defendant's tenth request to charge, to wit: 'If an unexpected accident happens, and subsequent to such accident precautions are taken to prevent a recurrence of a similar accident, evidence of such precautions is not admis-

sible to prove negligence prior to such accident.' "

In disposing of the said request the presiding Judge said: "When it was sought to be introduced by the plaintiff that certain changes had been made after the accident, on the ground that such conduct was an admission of negligence by the company, I excluded the evidence on defendant's motion; but when the defendant company produced its witness, Benjamin, the manager of the factory, and when, on his examination in chief, he stated that since the accident to Farley they had placed a shield in front of the belt to prevent a similar accident, the defendant having thus introduced the testimony, I cannot exclude it from your consideration. The stenographer furnishes me with this copy of the questions and answers: 'Have you since made any change in that machine to guard against a recurrence of the accident? A. Yes, sir. Q. Why did you do it? A. To avoid any accident that might happen in the future. Q. What was the change you made? A. We placed a shield up in front of the belt. Q. That would prevent a recurrence of the accident now? A. Yes, sir.' Now, if that evidence was given by defendant's witness, and it is before you, and it is true, it is for you to say what is the effect of it, not on the question of the admission of negligence, but on the question whether it throws light on the fact that the defendant was furnishing Farley with safe and suitable appliances, and a safe place to work. Without regarding it as an admission of negligence, you may consider it, and give what weight you think it deserves. So that I cannot charge you that request in the form it was submitted, under the circumstances." This exception is disposed of by what was said in considering the third exception, and is overruled.

The eleventh exception was abandoned.

The twelfth exception complains of error as follows: XII. "In charging that part of plaintiff's eleventh request, which instructs the jury that in fixing plaintiff's compensation for defendant's negligence, they could, in this case, include medical expenses, there being in this

case no testimony whatever of any medical expenses, and no facts to which such law was applicable." The plaintiff's eleventh request to charge was as follows: "The jury are instructed that in an action for injury to the person the plaintiff is entitled to recover compensation, so far as it is susceptable of an estimate in money, for the loss and damage caused to him by defendant's negligence, including not only medical expenses, a reasonable sum for his pain and sufferings, and also a fair recompense for the loss of what he would otherwise have earned in his trade or profession and has been deprived of the capacity of earning." There was testimony to the effect that the plaintiff employed physicians who rendered him professional services, for which the law implied a liability on his part for reasonable compensation. *Graydon* v. *Stokes*, 24 S. C., 483. The presiding Judge was correct in submitting the question as to the medical expenses to the jury, and this question is overruled.

As the four Justices of this Court are equally divided in opinion, the judgment of the Circuit Court stands affirmed.

MR. JUSTICE POPE concurs in the opinion of Mr. Justice Gary.

MR. CHIEF JUSTICE McIVER, *dissenting*. I dissent, because I think appellant's third and tenth exceptions should be sustained. These exceptions substantially make the point that, in a case of this kind, testimony tending to show that the defendant, after the accident has occurred resulting in the injury complained of, has taken additional precautions to prevent the recurrence of such an accident, is inadmissible for any purpose. In the case of *Columbia Railroad* v. *Hawthorne*, 144 U. S., 202, the Supreme Court of the United States so held. In that case, Mr. Justice Gray, as the organ of the Court, used the following language: "Upon this question there has been some difference of opinion in the Courts of the several States. But it is now settled, upon much consideration, by the decisions of

the highest Courts of most of the States in which the question has arisen, that the evidence is incompetent, because the taking of such precautions against the future is not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant had been negligent before the accident happened, and is calculated to distract the mind of the jury from the real issue and to create a prejudice gainst the defendant," citing quite a number of cases to sustain his view.    Amongst the cases cited is *Morse* v. *Minneapolis & St. Louis Railway*, 30 Minn., 465, where Mr. Justice Gray says: "The true rule and the reasons for it were well expressed."    In that case the following language was used: "But, on mature reflection, we have concluded that evidence of this kind ought not to be admitted under any circumstances * * * not for the reason given by some courts * * * but upon the broader ground that such acts afford no legitimate basis for construing such an act as an admission of previous neglect of duty.    A person may have exercised all the care which the law required, and yet, in the light of his new experience, after an unexpected accident has occurred, and as a measure of extreme caution, he may adopt additional safeguards. The more careful a person is, the more regard he has for the lives of others, the more likely would he be to do so, and it would seem unjust that he could not do so without being liable to have such acts construed as an admission of prior negligence.    We think such a rule puts an unfair interpretation upon human conduct, and virtually holds out an inducement for continued negligence."    These views, supported, as they are, by the highest authority, have also the support of reason and common sense.    If a person or corporation is engaged in an employment involving the use of machinery, which is always more or less dangerous, cannot, after an accident has occurred resulting in injury to an employee, provide additional safeguards to prevent the recurrence of such an accident, except at the peril of having his effort to insnre the safety of his employees, as far as

practicable, introduced as evidence to show his previous negligence, when sued for damages resulting from such ac-cident, it is very obvious that such rule would not only be against public policy, as is said in some of the cases, but would also tend to prevent providing such additional pre-cautions as experience has shown to be at least prudent, if not necessary. It is quite true, as said by the Circuit Judge, in his comments on defendant's tenth request to charge, that when this testimony was first offered (folio 39 of the "Case") the Judge ruled it out; but he overlooks the fact that when similar testimony was offered (folio 70 and 71 of the "Case") and objected to, the objection was overruled and the testimony was admitted. This occurred, as the "Case" shows, during the examination of the plaintiff as a witness, before the testimony on the part of the plaintiff was closed; and, of course, before the witness, Benjamin, had testified on the part of the defendant. The admissi-bility of the testimony must be tested by what was before the Court when the objection was interposed, and not by what occurred afterwards. Surely, if the plaintiff, against the objection of the defendant, is allowed to introduce in-competent evidence, the fact that the defendant, *after such ruling,* offers other evidence tending to show its version of the same fact, cannot be allowed to affect the question as to the original admissibility of the testimony when it was first offered. For if the testimony when originally offered was incompetent, then the testimony offered by the defendant, in rebuttal or explanation of the incompetent testimony adduced by plaintiff, should likewise be ruled out. While the Circuit Judge, in his comments on the defendant's tenth request to charge, does seem to intimate that the testimony in question was not competent as an admission of negli-gence, yet he distinctly says that it might be considered as throwing light on the question whether the defendant had furnished the plaintiff with safe and suitable appliances and a safe place to work, which, in my judgment, can mean nothing else than whether the defendant had been guilty

of negligence in not furnishing the plaintiff with safe and suitable appliances and a safe place to work, and hence he held that such testimony was competent on the question of negligence. So that if the law be, as it is stated in the authorities above cited, that such testimony is not competent "*under any circumstances*," or that such testimony "*has no legitimate tendency to prove that the defendant had been negligent before the accident happened*," it is clear that there was error on the part of the Circuit Judge.

For the reasons herein stated, I think the judgment of the Circuit Court should be reversed, and the case remanded to that Court for a new trial.

Mr. Justice JONES concurs in the *dissenting* opinion of Mr. Chief Justice McIver.

PER CURIAM. After a careful examination of the petition for rehearing, the Court is unable to discover that any material fact or principle of law has either been overlooked or disregarded. There is, therefore, no ground for a rehearing.

It is, therefore, ordered, that the petition be dismissed and the stay of remittitur heretofore granted be revoked.