18704

Will M. SIMMONS, as Administrator *de bonis non* of the Estate of Gloria Jean Daniels, Respondent, v. ATLANTIC COAST LINE RAILROAD COMPANY, Appellant.

(157 S. E. (2d) 172)

*Messrs. Willcox, Hardee, Houck, Palmer & O'Farrell* of Florence, *for Appellant,*

*Messrs. Gasque, Seals & Gasque,* of Latta, and *Marion H. Kinon,* of Dillon, *for Respondent,*

September 14, 1967.

BUSSEY, Justice.

In this action for the wrongful death of Gloria Jean Daniels, a minor fifteen years of age, resulting from a collision between a train of the defendant and a car driven by the decedent, the jury returned a verdict for the plaintiff in the sum of $10,000.00 actual damages, and $5,000.00 punitive damages. The only issue presented by the appeal is whether the defendant is entitled to judgment on the ground that the evidence is susceptible of no other reasonable inference than that the decedent was guilty of contributory "gross or willful negligence" as a matter of law, Sec. 58-1004 of the 1962 Code of Laws, it being conceded for the purpose of this appeal that the statutory signals were not given by the defendant as required by Code Sec. 58-743.

In determining this question it is elementary that the evidence, and all inferences reasonably deducible therefrom have to be viewed in the light most favorable to the plaintiff. We, therefore, review and state the evidence in accordance with this principle.

The defendant's train was proceeding on the northbound track of its main line through the town of Latta, South Carolina, and the car, owned by decedent's mother, was proceeding in an easterly direction on Academy Street which intersects the railroad at approximately a right angle. Gloria lived in the rural area of Dillon County between Latta and Dillon, apparently several miles from Latta. She attended church and school in or near Latta, but the proximity of neither the school nor the church to the particular railroad crossing, one of several in Latta, appears in the record. She was transported to and from school by bus, and how she went to church does not appear. Prior to the day of the fatal accident, she had been allowed to drive her mother's car some when accompanied by her mother, but it does not appear that she had ever before driven a car unless accompanied by an adult. At the time of the accident, she was accompanied only by her younger sister who was also fatally injured. She had never before driven the car in the uptown area of Latta even when accompanied by an adult. On the afternoon of the accident her mother was away, and Gloria, inferentially, obtained the car from a man with whom her mother had left it. While Gloria was aware of the existence of the particular crossing, there is nothing in the record to show that she was familiar with either the crossing, the obstructions to her view disclosed by the record, defendant's train schedules, or its speed limit, which was eighty miles per hour.

As one approaches the crossing traveling east on Academy Street, the view of defendant's track to the south is obstructed by several buildings, and on the day of the accident by two piles of coal located, at least inferentially, on the defendant's right of way. There is evidence that due to these

obstructions a driver would have to be within fifty-six feet of the center of defendant's northbound track before a clear view could be had of an approaching northbound train. An engineer who made a plat of the scene for the plaintiff shortly after the accident so testified.

In the course of defendant's testimony it developed that at the time of the collision a coal truck was being loaded from the coal pile nearest to defendant's main line. The individual who was loading the truck testified and pointed out the location of the truck on either a plat or a scale model of the crossing which was in evidence, but we cannot tell from the record whether the truck possibly constituted an additional obstruction to Gloria's view of the approaching train. The engineer who testified for the plaintiff as to the view was apparently unaware of the presence of the truck at the moment of the accident.

The defendant's train was a thirteen car passenger train which was thirty-five minutes late when it left Florence. It was admittedly proceeding through Latta at a speed of 78 miles per hour, and there was other evidence that the speed thereof was as much as 90 miles per hour. The left front corner of the engine struck the right front corner or side of the car, which was hurled or carried some two hundred thirty-one feet north of the crossing, and the distance required to stop the train, in emergency, was approximately one and a half miles.

That Gloria was aware of even the existence of the crossing is shown only by the fact that about five minutes prior to the collision she was seen to cross it driving in a westerly direction on Academy Street, on which occasion she slowed down to ten or fifteen miles per hour. The posted speed limit on Academy Street was 35 miles per hour. Only two witnesses testified to having seen the car immediately before the collision; a pedestrian walking in an easterly direction on the south side of Academy Street, and the fireman. The pedestrian testified that she did not see the car until almost the moment of impact; that it was driving at a normal rate

of speed, and that it seemed to slow down just before it was hit. She was cross examined as to her testimony at the Coroner's inquest, and from her testimony as a whole, it is inferable that the car had come very nearly to a complete stop at the moment it was struck.

The fireman testified that the engine was within one hundred fifty to two hundred feet from the crossing when the car came into his view, and it is inferable from his testimony on cross examination that the distance was substantially less than two hundred feet. He testified that the car was proceeding at a normal rate of speed, which he considered to be anywhere from 25 to 35 miles per hour, and that he could not tell whether the car slowed before impact. Neither the pedestrian nor the fireman actually observed Gloria or her precise conduct.

Under the foregoing facts and circumstances, we think that we would not be warranted in holding that the evidence is susceptible of no other reasonable inference than that Gloria was guilty of contributory gross or willful negligence as a matter of law. Contributory negligence is an affirmative defense and, to be entitled to a non-suit or directed verdict, the burden was upon the defendant to prove that Gloria failed to use even slight care for her own safety. The evidence does not reflect whether, or just when, she looked to her right in approaching the crossing. Her lips are sealed by death. She is, however, clothed with the presumption that she did look in a careful manner. In the absence of proof to the contrary, it is presumed that a person observed the law and conducted herself as a person of ordinary prudence, reason and care. *Thornton v. Seaboard Air Line Ry.*, 98 S. C. 348, 82 S. E. 433. Additionally, the evidence is susceptible of the inference that she did so look, and very nearly succeeded in bringing the car to a stop before it was struck.

There is no evidence that she was familiar with the crossing or the obstructions to her view to the right, and it was natural for her, in the exercise of due care, to look

first to the north in approaching the crossing, as the southbound track of defendant's main line was somewhat nearer to her. A train at 90 miles an hour moves one hundred thirty-two feet per second. At such speed, and taking the maximum distance testified to by the fireman, the engine was only one and a half seconds from the point of impact when the car came into the fireman's view. Conversely, it would appear that Gloria only had approximately the same brief moment in which to take preventive action after she first had an. opportunity to see the approaching train.

A traveler approaching a railroad crossing has a right to presume that the railroad will obey the law and give the statutory signals; while the wrongful conduct of the railroad in this regard will not excuse the traveler from the exercise of slight care, yet in determining whether he did not use such care, his conduct is to be judged in the light of such presumption. *Thompson v. Southern Ry.,* 208 S.C. 49, 37 S. E. (2d) 278; *Langston v. Atlantic Coast Line R. Co.,* 197 S. C. 469, 15 S. E. (2d) 758; *Harrison v. Atlantic Coast Line R. Co.,* 196 S. C. 259, 13 S. E. (2d) 137; *Cook v. Atlantic Coast Line R. Co.,* 196 S. C. 230, 13 S. E. (2d) 1, 133 A.L.R. 1144.

Under all of the circumstances disclosed by the record, when the conduct of Gloria is judged in the light of the presumption to which she was entitled, we conclude that the issue of any contributory "gross or willful negligence" on her part was properly submitted to the jury, and the judgment of the lower court, is accordingly,

Affirmed.

Moss, C. J., and Lewis, Brailsford and Littlejohn, JJ., concur.