481 S.E.2d 444

**Antoinette BROWN, Guardian Ad Litem for Darius BROWN, Appellant/Respondent,**

v.

**Christopher SMALLS, Respondent/Appellant.**

**No. 2624.**

Court of Appeals of South Carolina.

Heard Jan. 7, 1997.

Decided Jan. 27, 1997.

Teresa Zachry Hill, Charleston, for appellant/respondent.

Kathryn S. Craven, of Grimball & Cabaniss, Charleston, for respondent/appellant.

ANDERSON, Judge:

Antoinette Brown, as Guardian ad Litem for Darius Brown (Brown), filed this action in negligence for personal injuries resulting from a collision between a motorist, Christopher Smalls (Smalls) and a pedestrian, Brown. Smalls filed an answer entering a general denial and asserting the affirmative defense of comparative negligence. At trial, the jury found Brown seventy-five percent (75%) negligent and Smalls twenty-five percent (25%) negligent. Both parties appeal. We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

On October 16, 1992, Brown, a three year old child, was playing in Elizabeth Wright's yard on Bozo Lane in Charleston County. Bozo Lane, a straight, two-way street, runs through a residential subdivision and has houses on both sides. Because cars were parked on both sides and the street was very crowded, cars traveling in opposite directions could not go down the street at the same time. In addition to several adults standing around outside, a lot of children were running and playing outside and in Wright's yard. Several of the children were riding bicycles in the road.

On this date, Smalls, who was driving Ronette Smiley's mother's car, was following Smiley, Smalls' girlfriend at the time, to her house. Smiley testified she "mashed her brakes" to alert Smalls to "slow up a little bit" because "there were a bunch of kids playing in the street and in the yard with no adult supervision." According to Smiley, the children were playing "back and forth across the street."

As Smiley approached Wright's home on Bozo Lane, she observed Brown on the edge of the driveway pushing his bicycle. Smiley witnessed the accident when she looked in her rearview mirror. She testified Smalls "came to a complete stop and [Brown] pushed the bicycle into the [front driver's side of the] car." She stated she did not see the car run over Brown, nor did she see Smalls drive off of the roadway.

Robert Brown, Jr., Smalls' friend and a passenger in Smalls' car on the day of the accident, observed children playing in Wright's yard. He stated Darius Brown was on a bicycle and "come out and he hit the car." When he first noticed Brown coming out of the yard toward the car, he yelled out Smalls' name to get his attention because Smalls "didn't see the boy coming out." He stated Smalls came to a complete stop and Brown then ran into the road and hit the front right-hand side of the car. According to Robert Brown, Jr., Smalls was traveling ten miles per hour and did not drive his car off of the road before the accident occurred. Brown further testified Smalls' car was in the roadway when Darius Brown ran into the road and hit the car. However, Brown also stated Smalls swerved off of the road to move around another vehicle and that the accident occurred at that time.

Dr. Robert Lowery, Brown's orthopedist, testified Brown's injuries were consistent with being run over by an automobile.

Yvonne Legare, Brown's aunt, was riding down Bozo Lane with her sister, Christine Williams, and her aunt, Sara Frazier, who was driving the car. Frazier had to drive very slowly down the road because cars were parked on both sides. Legare stated Frazier's vehicle was in front of Smalls' vehicle. However, neither Legare nor Williams witnessed the accident.

Immediately before the accident, Williams saw Brown sitting on a big wheel on the side of the road. Frazier stated she saw Brown before the accident and he was pushing his bicycle toward the road. Legare testified Frazier pulled over on the left side of the road to park, Smalls "swerved over on the [right] side to go past her," and then she "heard a loud sound, like a Bip." Frazier heard Smalls' "wheels squeal" after she parked her car. Legare stated Brown's body was on the shoulder of the road on the right and his legs were underneath Smalls' car on the rear right passenger side.

Carmon Legare witnessed the accident. She observed "a whole lot of people" in Wright's yard. She testified approximately twenty-five children were in the yard and they were "[p]laying, back and forth across the street." Legare saw Brown that afternoon "[i]n the yard and across the street." According to Legare, Brown was pushing his bicycle across the street when the car hit him. She stated Brown tried to cross the street between the cars and did not stop before he went into the street, but "just ran on across." She estimated Smalls was driving fifteen miles per hour. Legare stated Smalls did not try to pass Frazier's car and that Frazier was behind Smalls. She further stated Smalls did not drive off of the road before the accident and that Brown was on the pavement when he got hit.

As Smalls was driving, he saw a lot of parked cars in the area. After Brown ran out of the driveway and hit the car, Smalls came to a complete stop. Smalls stated he did not drive off of the roadway onto the shoulder of the road nor did he try to pass a car that was parking on the left side of the road. In his deposition, Smalls admitted he saw children playing and "a good many people out there."

Sharon Robinson, who lives on Bozo Lane, witnessed the accident. She saw the children riding their bicycles from driveway to driveway. Robinson warned Brown and the other children "not to ride [their bicycles] in the street because you don't know when a car is coming through." Although Brown got off his bicycle for a few minutes, he soon got back on it again. Robinson stated Brown came out of the driveway with his bicycle, did not look to see if anything was coming, and ran into the rear right side of Smalls' car. Brown was trying to cross the street on his bicycle to go play with the children in the yard across the street and did not stop before he rode his bicycle into the road. She testified Smalls could not have seen Brown in the driveway because there were too many cars parked on the side of the street.

At the close of Brown's case, Smalls moved for a directed verdict on the issue of negligence, which the court denied. At the close of Smalls' case, the court denied Brown's motion for a directed verdict as to the defense of comparative negligence, but granted Smalls' motion for a directed verdict on the issue of punitive damages.

Subsequent to the jury instructions, Brown objected to the charging of comparative negligence and to the following charge requested by Smalls: "I charge you that ordinarily a person has a right in the absence of circumstances to put a reasonable person on notice to the contrary to assume that others will act with due care and in accordance with the law." Brown further requested an additional charge as to the effect of the child's age as it applies to the law of comparative negligence. The court denied this request.

The jury found Brown's amount of negligence was seventy-five percent (75%) and Smalls' amount of negligence was twenty-five percent (25%). The court denied both Brown's motion for a new trial and Smalls' motion for judgment notwithstanding the verdict.

## *ISSUES*

I. Did the trial court err in failing to submit the issue of punitive damages to the jury?

II. Was the trial court's jury instruction as to the standard of care involving minors erroneous?

III. Did the trial court err in submitting the issue of comparative negligence to the jury?

## *STANDARD OF REVIEW*

■ In an action at law on appeal of a case tried by a jury, the jurisdiction of this Court extends merely to corrections of errors of law, and a factual finding of the jury will not be disturbed unless a review of the record discloses there is no evidence which reasonably supports the jury's findings. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976).

## *LAW/ANALYSIS*

### STANDARD OF CARE INVOLVING MINORS

■ Brown argues the trial court improperly instructed the jury as to the standard of care involving minors. The judge charged the following:

Our common law rules of the road require that an operator of a motor vehicle use the same care that would have been exercised by a person of ordinary reason and prudence if that person were driving the same vehicle at the same time and place and under the same circumstances.

A person using the public roads of this State owes a duty to exercise ordinary care at all times to avoid placing himself or herself or others in danger, and to use like care to avoid an accident.

A driver on the public roads owes a duty to keep a proper lookout for other persons or objects upon the highway. This duty is not merely one of looking, but one of seeing.

A driver must look in such an intelligent and careful manner as to enable him or her to see a person or object upon a highway which may be reasonably expected.

A person operating a motor vehicle is under a duty to keep the vehicle under proper control so as to be able to slow down, stop or turn such vehicle in order to avoid colliding with another vehicle or pedestrian or obstruction lawfully on the roadway.

A person who fails to keep a proper lookout or fails to keep his vehicle under proper control or fails to see what a person of ordinary care would have seen is negligent.

. . . .

Where a driver of a motor vehicle knows of the presence of children in the neighborhood or should have known of this fact, the driver is under a duty to exercise care, usually stated to be reasonable, ordinary, due or proper care, for the safety of the child.

More care must be exercised toward children than toward persons of mature years.

Children of tender years are entitled to care proportionate to their inability to foresee and avoid the perils that they may encounter.

The caution required is according to the maturity and capacity of the child, and is a matter to be determined in each case by the circumstances of that case.

In South Carolina, a person's age is relevant to the standard of care in two ways:

A person fourteen years or older is held to an adult standard of care normally.

A child below the age of fourteen is held to the standard of a reasonable child of his same age.

One must be alert for the unpredictable acts of children.

The erroneous charge given to the jury in regard to the standard of care involving minors was exacerbated by the following charge, to which Brown objected:

I charge you that ordinarily a person has a right in the absence of circumstances to put a reasonable person on notice to the contrary to assume that others will act with due care and in accordance with the law.

Charging this principle of law is especially egregious because it injects a standard of care applicable to adults. This principle is inapposite to the facts of this case. Juxtaposing this principle to the standard of care involving minors results in a confusing jury instruction.

■ The trial judge is required to charge the current and correct law. *McCourt v. Abernathy, et al.,* 318 S.C. 301, 457 S.E.2d 603 (1995); *Singletary v. South Carolina Dep't of*

*Educ.*, 316 S.C. 153, 447 S.E.2d 231 (Ct.App.1994). Ordinarily, a trial judge has a duty to give a requested instruction that correctly states the law applicable to the issues and evidence. *Singletary, supra; Wall v. Suits,* 318 S.C. 377, 458 S.E.2d 43 (Ct.App.1995).

Where a request to charge is timely made and involves a controlling legal principle, a refusal by the trial judge to charge the request constitutes reversible error. *Baker v. Weaver,* 279 S.C. 479, 309 S.E.2d 770 (Ct.App.1983) (citing *Eaddy v. Jackson Beauty Supply Co.,* 244 S.C. 256, 136 S.E.2d 297 (1964)). Moreover, when general instructions to the jury are insufficient to enable the jury to understand fully the law of the case and issues involved, a refusal to give a requested charge is reversible error. *Jones v. Ridgely Communications, Inc.,* 304 S.C. 452, 405 S.E.2d 402 (1991); *Burns v. South Carolina Comm'n for the Blind,* 323 S.C. 77, 448 S.E.2d 589 (Ct.App.1994).

In *Standard v. Shine,* 278 S.C. 337, 295 S.E.2d 786 (1982), our Supreme Court enunciated the standard of care involving minors:

Heretofore, we have held, by analogy to the criminal law, that a child under seven years of age was conclusively presumed to be incapable of contributory negligence; a rebuttable presumption existed that a child between the ages of seven and fourteen was incapable of contributory negligence; and a child of fourteen years and over was presumed capable of contributory negligence. *Chitwood v. Chitwood,* 159 S.C. 109, 156 S.E. 179 (1930); *King v. Holliday,* [116 S.C. 463, 108 S.E. 186 (1921) ]. However, we have never addressed the primary negligence of minors, the issue before us today. Despite our previous holdings, the prevailing view in cases of both primary and contributory negligence of minors is that no arbitrary limits as to a minimum age should be set. The capacities of children vary greatly, not only with age, but also with individuals of the same age. Therefore, no very definite statement can be made as to just what standard is to be applied to them. § 32 Prosser on Torts (4th Ed.). Of course, a child of tender years is not required to conform to an adult standard of care. The Restatement (Second) of Torts § 283A suggests that a

minor's conduct should be judged by the standard of behavior to be expected of a child of like age, intelligence, and experience under like circumstances.

Today we adopt that standard of care for minors in both primary and contributory negligence cases. Insofar as today's decision differs from our previous cases dealing with the contributory negligence of minors, those cases are overruled.

*Standard,* 278 S.C. at 338–39, 295 S.E.2d at 787.

In *McCormick v. Campbell,* 285 S.C. 272, 329 S.E.2d 752 (1985), the Court again addressed the issue:

In *Standard v. Shine,* 278 S.C. 337, 295 S.E.2d 786 (1982), we abrogated the arbitrary age presumptions in determining a minor's negligence or contributory negligence holding the behavior of minors under the age of fourteen should be judged by the conduct expected of a minor of like age under like circumstances.

*McCormick,* 285 S.C. at 273, 329 S.E.2d at 752. *See also Inman v. Thompson,* 297 S.C. 221, 375 S.E.2d 358 (Ct.App. 1988) (quoting *Standard, supra* ).

■ We suggest the following charge in regard to minors under the age of fourteen:

A child under the age of fourteen years is not required to conform to an adult standard of care. A minor's conduct should be judged by the standard of behavior to be expected of a child of like age, intelligence, and experience under like circumstances. A child may be so young as to be manifestly and utterly incapable of exercising any of those qualities of attention, perception, knowledge, experience, intelligence, and judgment which are necessary to enable the child to perceive a risk and to realize its unreasonable character. On the other hand, it is obvious that a minor who has not yet attained majority may be quite as capable as an adult of exercising such qualities.

## COMPARATIVE NEGLIGENCE ISSUE

■ Both Brown and Smalls argue the trial court erred in denying their motions for directed verdict as to negligence. Smalls further contends the court erred in denying his motion

for judgment notwithstanding the verdict. In the face of competing motions for a directed verdict, the judge submitted the issue of comparative negligence to the jury. An analysis of the evidentiary record reveals paradigmatically the existence of factual issues which must be resolved by the trial jury.

In South Carolina, the harshness of the "all or nothing rule" has been superseded by comparative negligence. Comparative negligence rules have developed into three major categories:

(1) The "pure" or "100 percent" comparative negligence rule;

(2) The "modified" rule, which can be further subdivided into:

a. the rule that requires that the plaintiff's negligence be less than the defendant's and

b. the New Hampshire rule, which requires that the plaintiff's negligence not exceed the defendant's; and

(3) A "slight-gross" comparative negligence rule.

*See* 57B AM.JUR.2D *Negligence* § 1140 (1989).

In *Nelson v. Concrete Supply Co.*, 303 S.C. 243, 399 S.E.2d 783 (1991), our Supreme Court adopted the doctrine of comparative negligence:

Having determined comparative negligence is the more equitable doctrine, we now join the vast majority of our sister jurisdictions and adopt it as the law of South Carolina to the extent set forth below. For an exhaustive analytical discussion of the history and merits of comparative negligence, we refer the bench and bar to the opinion of Chief Judge Sanders in *Langley v. Boyter*, 284 S.C. 162, 325 S.E.2d 550 (Ct.App.1984).

For all causes of action arising on or after July 1, 1991, a plaintiff in a negligence action may recover damages if his or her negligence is not greater than that of the defendant. The amount of the plaintiff's recovery shall be reduced in proportion to the amount of his or her negligence. If there is more than one defendant, the plaintiff's negligence shall be compared to the combined negligence of all defendants.

558

*See Elder v. Orluck,* 511 Pa. 402, 515 A.2d 517 (1986). (footnote omitted).

*Nelson,* 303 S.C. at 244–45, 399 S.E.2d at 784. This Court further discussed the doctrine in *Ott v. Pittman,* 320 S.C. 72, 463 S.E.2d 101 (Ct.App.1995):

> If a plaintiff was negligent as a matter of law, and that negligence proximately caused the injury complained of, under the doctrine of contributory negligence, the plaintiff was automatically barred from recovery. Under the doctrine of comparative negligence, negligence by the plaintiff does not automatically bar recovery by the plaintiff unless his negligence is greater than that of the defendant.

*Ott,* 320 S.C. at 80, 463 S.E.2d at 106. *See also Hopson v. Clary,* 321 S.C. 312, 468 S.E.2d 305 (Ct.App.1996) (plaintiff's claim was barred under comparative negligence doctrine because plaintiff's own negligence was, as a matter of law, greater than any negligence attributable to defendant and the more determinative factor in causing the accident).

Ordinarily, the negligence of a party is a question of fact for the jury. *See Thompson v. Michael,* 315 S.C. 268, 433 S.E.2d 853 (1993) (contributory negligence is generally question of fact for jury); *Felder v. K–Mart Corp.,* 297 S.C. 446, 377 S.E.2d 332 (1989) (contributory negligence and negligence are questions of fact for jury); *Graham v. Whitaker,* 282 S.C. 393, 321 S.E.2d 40 (1984) (negligence and contributory negligence are generally questions for jury); *Kennedy v. Custom Ice Equip. Co.,* 271 S.C. 171, 246 S.E.2d 176 (1978) (negligence and contributory negligence are ordinarily questions of fact for jury); *Wilson v. Marshall,* 260 S.C. 271, 195 S.E.2d 610 (1973) (questions of negligence and contributory negligence are ordinarily questions of fact for jury); *Baxley v. Rosenblum, et al.,* 303 S.C. 340, 400 S.E.2d 502 (Ct.App.1991) (issue of contributory negligence is question of fact for jury); *Niver v. South Carolina Dep't of Hwys. and Pub. Transp.,* 302 S.C. 461, 395 S.E.2d 728 (Ct.App.1990) (contributory negligence is ordinarily question of fact for jury); *Brown v. Howell,* 284 S.C. 605, 327 S.E.2d 659 (Ct.App.1985) (negligence and contributory negligence are questions of fact for jury); *Davenport v. Walker,* 280 S.C. 588, 313 S.E.2d 354 (Ct.App.1984) (negligence and contributory negligence are ordinarily questions of fact for jury).

The doctrine of comparative negligence replaces the harsh rule of contributory negligence. In the application of the doctrine of comparative negligence by a trial jury to a factual scenario, the litigants receive a careful, exhaustive factual review of their own conduct. In adopting the court-made rule of comparative negligence in *Nelson,* our Supreme Court in essence followed what is known as the "New Hampshire rule." *See* 57B AM.JUR.2D *Negligence* §§ 1148–49 (1989).

■ As a general rule, under a "less than or equal to" comparative negligence rule, determination of respective degrees of negligence attributable to the plaintiff and the defendant presents a question of fact for the jury, at least where conflicting inferences may be drawn. Accordingly, apportionment of negligence, which determines both whether a plaintiff is barred from recovery or can recover some of his damages and the proportion of damages to which he is entitled, is usually a function of the jury. *See* 57B Am.Jur.2d *Negligence* § 1279 (1989). *See also Baker v. Matthews,* 241 Ark. 539, 408 S.W.2d 889 (1966) (where question to be decided is which party was negligent, and if both were negligent then which was more negligent, it is province of jury to determine negligence, if any, or degree of negligence, of each).

In a negligence action, the plaintiff must prove proximate cause. *Rush v. Blanchard,* 310 S.C. 375, 426 S.E.2d 802 (1993). Negligence is not actionable unless it is a proximate cause of the injury. *Hanselmann v. McCardle,* 275 S.C. 46, 267 S.E.2d 531 (1980). *See also Vinson v. Hartley,* 324 S.C. 389, 477 S.E.2d 715 (Ct.App.1996).

### CONCLUSION

The record supports the factual conclusion that Brown and Smalls were negligent. A comparative analysis of the negligence of the parties proximately causing the injuries and damages is a jury issue. Succinctly put, the comparative negligence issue in the case *sub judice* is a factual matter. It is not a matter of law for the court under this trial record. Concomitantly, the judge was correct in denying the parties' motions for directed verdict on the issue of comparative negligence and Smalls' motion for judgment notwithstanding the verdict.

The jury instruction as to the standard of care involving minors was erroneous. This holding makes it unnecessary for us to consider the parties' remaining assertions. Accordingly, the jury verdict in favor of Smalls is reversed and the case is remanded for a new trial.

**REVERSED and REMANDED.**

CURETON and GOOLSBY, JJ., concur.