532 S.E.2d 612

**Donald ROSS, Appellant,**

v.

**Roland PADDY d/b/a Paddy–Son Development Company, Inc., Respondent.**

**No. 3135.**

Court of Appeals of South Carolina.

Heard Jan. 11, 2000.
Filed April 4, 2000.
Refiled May 26, 2000.

Gene M. Connell, Jr., of Kelaher, Connell & Connor, of Surfside Beach, for appellant.

Charles V. Leonard, of Harris & Hanna, of Myrtle Beach, for respondent.

## ORDER DENYING PETITION FOR REHEARING

PER CURIAM:

After careful consideration of the Petition for Rehearing, the Court is unable to discover any material fact or principle of law that has been either overlooked or disregarded and, hence, there is no basis for granting a rehearing. It is, therefore, ordered that the Petition for Rehearing be denied. However, Opinion Number 3135, filed March 20, 2000, is withdrawn and the attached opinion is substituted.

HOWARD, Judge:

Donald Ross brought this negligence action against Roland Paddy, d/b/a Paddy–Son Development Company, Inc. ("Paddy"), for injuries allegedly sustained when a television fell from a hanging platform at Miami Subs, a restaurant constructed by Paddy. The jury returned a verdict for Ross, determining his actual damages were $4,182.23. The trial court reduced this amount by 49% based on the jury's finding of comparative negligence and entered judgment for $2,132.94. Ross appeals, arguing the trial court erred in charging the jury on comparative negligence. We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

Ross was injured on August 31, 1995, while working at Miami Subs, a Myrtle Beach restaurant owned by Michael Graham. Paddy's construction company built the restaurant. Construction was completed on or around August 15, 1995. Prior to the restaurant's opening, Paddy installed televisions in all four corners of the restaurant at Graham's request. The televisions rested upon platforms which were hung from the ceiling, supported on each of the four corners by plastic link chain.

Ross began working at Miami Subs on August 31, 1995 as a cook. On his first day, the store manager asked Ross to wipe off tables prior to closing. According to Ross, he was wiping a corner table when the television hanging above him fell from its suspended platform. Ross stated he reflexively put his hands up to protect his head when he heard the noise, and the television struck him on the right hand.

Ross's hand was cut and bleeding heavily. He was X-rayed and received stitches in his hand at a local hospital. Ross returned to the hospital several times for continued swelling and pain in his right hand. Hospital personnel referred Ross to a Myrtle Beach orthopedist, Dr. Richard W. Ward, for further evaluation.

On October 11, 1995, following more X-rays and a CAT scan, Dr. Ward put a cast on Ross's right hand after the CAT scan revealed a fracture in his wrist. Ross wore the cast for about eight weeks. Ross was unable to perform his duties as a cook and remained out of work until December 1995. Dr. Ward diagnosed him as having a permanent impairment of 17% to his right arm.

Ross brought this action alleging Paddy was negligent in its construction of Miami Subs because it installed and/or suspended the televisions in an improper and unsafe manner. At trial, the court instructed the jury on comparative negligence, over Ross's objection. The jury returned a verdict of $4,182.23 in actual damages for Ross. It found Paddy was 51% negligent and Ross was 49% negligent in causing Ross's injuries. The trial court reduced the verdict by 49% based on Ross's negligence and entered judgment for $2,132.94.

## LAW/ANALYSIS

### I. Judge's Instruction on Comparative Negligence

On appeal, Ross argues the trial court should have directed a verdict in his favor as to liability and should not have submitted the issue of comparative negligence to the jury because there was no evidence presented, other than mere speculation by defense counsel, as to his comparative negligence. Alternatively, Ross argues that the trial court erred in its instruction to the jury on comparative negligence, because the court did not instruct the jury that the defendant had the burden of proving the negligence of the plaintiff as a proximate cause of his own injuries. We conclude the trial court did not err in submitting the issue of Ross's comparative negligence to the jury, but that the trial court did err by failing to instruct the jury as to the defendant's burden of proof on this issue.

A plaintiff in a negligence action may recover damages if his or her own negligence is not greater than that of the defendant. *Nelson v. Concrete Supply Co.*, 303 S.C. 243, 399 S.E.2d 783 (1991). The burden of proof is on the plaintiff to establish the negligence of the defendant. *Ott v. Pittman*, 320 S.C. 72, 463 S.E.2d 101 (Ct.App.1995). The determination of the respective degrees of negligence attributable to the plaintiff and the defendant is a question of fact for the jury, at least where conflicting inferences may arise. *Brown v. Smalls*, 325 S.C. 547, 481 S.E.2d 444 (Ct.App.1997).

The defense maintained that Ross was not injured when one of the plastic chains broke, causing the television to fall. Rather, they argued that Ross caused his own injuries by standing on the table to turn off the television set, thereby causing the table to break under his weight. Then, in an attempt to catch his balance, they posit that Ross grabbed the television, pulling it from the ceiling onto himself.

Ross testified that he was cleaning a corner table when one of the plastic link chains holding the television broke, and the television fell on him, breaking his right hand. Ross repeatedly denied he ever stood on the table or tried to turn the television off. His only job was to wipe off tables in the dining area. Ross's proof of the events was bolstered by his expert witness, Robert Taylor, a mechanical engineer. Taylor testified the televisions at the restaurant were not properly supported and the plastic chains used in the project were clearly marked with warnings from the seller that they were not to be used for hanging overhead loads. Taylor stated to a reasonable degree of engineering certainty that the use of the plastic chains was improper. Taylor further noted that all of the newly-installed televisions at Miami Subs were remote controlled; therefore, there would be no reason for Ross to stand on a table to enable him to turn off a television.

In contrast, Paddy denied the plastic link chains were insufficient to hold the televisions. Paddy testified the tables were made of particle board. He stated Miami Subs owner Graham purchased the plastic link chains at Lowe's and that Graham and two others tested the chains by standing on them. He stated the chain that actually broke had a straight cut on one link, as if it had been cut with a razor.

## A. Directed Verdict

■ Ross moved for a directed verdict as to liability, arguing the evidence was susceptible to only one reasonable inference, that Paddy's negligence in using the plastic chain to suspend the television proximately caused his injury. Ross also moved to strike the affirmative defense of comparative negligence based on the same assertion. Ross argued that the defense's theory of causation was pure speculation because there was no evidence he stood on a table or grabbed the television to catch his balance.

The trial court denied Ross's motion for a directed verdict, finding circumstantial evidence supported Paddy's theory. Accordingly, the court ruled it would instruct the jury on comparative negligence. We find no error in the trial court's ruling.

■ Even where the evidence is uncontradicted, the jury may believe all, some, or none of the testimony, and where the credibility of the witness has been questioned, the matter is properly left to the jury to decide:

> The fact that evidence is not contradicted by direct evidence does not render it undisputed, as there still remains the question of its inherent probability and the credibility of the witnesses or his interest in the result. To justify a Court in instructing a jury that a witness has told the truth, and in directing a verdict based on the truthfulness of his evidence, there must be nothing in the circumstances or surroundings tending to impeach the witness or to throw discredit on his statements. If there is anything tending to create distrust in his truthfulness, the question must be left to the jury.

*Terwilliger v. Marion,* 222 S.C. 185, 188, 72 S.E.2d 165, 166 (1952).

In *Terwilliger,* the trial court denied the appellant's motion for directed verdict even though the appellant contended the evidence was uncontradicted. Our supreme court upheld the trial court's instruction that the testimony of witnesses, although uncontradicted, is not binding, and the jury has a right to examine the evidence in light of all the circumstances and to give it such weight as the jury may think it is entitled. *Id.*

We hold the trial court did not err in denying Ross's motion for a directed verdict on liability, considering the issues of credibility and the circumstantial evidence supporting the defense's theory of causation. Viewed in a light most favorable to Paddy, the evidence demonstrated that the each of chains was able to hold weight in excess of the television's weight, and that four chains supported the television. The chains were in use only a few days, and the strength of the chains was demonstrated by the testimony of Paddy's witnesses, who stood on them to test their strength. The table top was made of particle board, which would be more likely than most other wood products to break under the weight of an adult. Furthermore, questions were raised as to the likely trajectory of a television falling off of its platform as a result of a separating chain link, which was arguably inconsistent with Ross's version of events. The strength of Ross's expert testimony was questionable, because the expert had done little testing of the chain links, choosing instead to base his opinions on more general engineering principles and the manufacturer's warning. Thus, because the jury could believe all, some, or none of Ross's or his expert's testimony, the evidence was subject to opposing inferences and presented a question of fact as to Paddy's negligence and the negligence of Ross as a proximate cause of his own injury.

## B. Burden of Proof

Ross not only objected to the trial court's decision to charge comparative negligence, but also to the trial court's failure to instruct the jury that Paddy had the burden of proving Ross's negligence by a preponderance of the evidence. Paddy asserted the affirmative defense of comparative negligence, and as such, Ross argues that Paddy had the burden of proving it. *See Simmons v. Atlantic Coast Line R. Co.,* 250 S.C. 199, 157 S.E.2d 172 (1967); *Padgett v. Southern Ry. Co.,* 216 S.C. 487, 58 S.E.2d 895 (1950); *Oliver v. Columbia, N. & L.R. Co.,* 65 S.C. 1, 43 S.E. 307 (1902). Paddy does not contest this issue, but argues that South Carolina case law does not require the trial judge to instruct the jury that the defendant has the burden of proving the plaintiff's comparative negligence as part of the defendant's affirmative defense. We disagree with Paddy.

The trial court instructed the jury on the elements of negligence and informed the jury that the plaintiff had the burden of proving the defendant's negligence by a preponderance of the evidence. The trial court also charged the jury as to comparative negligence, stating the plaintiff could recover only if his negligence was not greater than the defendant's negligence. However, the trial court did not instruct the jury that the defendant had the burden of proving the negligence of the plaintiff. The charge does not explicitly state this, and taken as a whole, does not convey this message to the jury.

Paddy argues *Reiland v. Southland Equip. Serv., Inc.,* 330 S.C. 617, 500 S.E.2d 145 (Ct.App.1998), *Brown,* 325 S.C. 547, 481 S.E.2d 444 (Ct.App.1997), and *Ott,* 320 S.C. 72, 463 S.E.2d 101 (Ct.App.1995) address the appropriate jury charge in a comparative negligence case and do not require the judge to instruct the jury that the defendant bears the burden of proving comparative negligence. We disagree.

Rule 8(c), SCRCP requires a party to set forth any affirmative defenses in the pleadings. We conclude comparative negligence is an affirmative defense in South Carolina. *See generally Brown,* 325 S.C. at 552, 481 S.E.2d at 446 ("Smalls filed an answer entering a general denial and asserting the affirmative defense of comparative negligence.")

Other states have also recognized comparative negligence as an affirmative defense. *See Glenridge Unit Owners Ass'n v. Felton,* 183 Ga.App. 858, 360 S.E.2d 418, 421 (1987) ("[C]omparative negligence is available as an affirmative defense in Georgia . . ."); *Skaggs v. Elk Run Coal Co.,* 198 W.Va. 51, 479 S.E.2d 561, 586 n. 28 (1996) (". . . the defendant must bear the burden of persuasion on the affirmative defense [ ] of . . . comparative negligence."); 57B Am.Jur.2d *Negligence* § 1274 ("The contributory negligence of the plaintiff which will proportionally mitigate the damages of the defendant under the comparative negligence rule is an affirmative defense.").

Furthermore, states finding comparative negligence to be an affirmative defense require the judge to charge the jury that the burden of proof shifts to the defendant to prove the plaintiff's comparative negligence. *See Glenridge Unit Owners Ass'n,* 360 S.E.2d at 421 ("While comparative negligence is available as an affirmative defense in Georgia . . . the burden

of proving it remains with the party relying on it and not upon the party making the original negligence claim to disprove it."); *Wheeler v. White,* 714 A.2d 125 (Me.1998) (holding the jury was fully instructed on the principles of comparative negligence when they were told the burden of proof is on the defendant when he contends the plaintiff negligently caused his own injuries and if the jury indeed found the plaintiff was negligent, the law of comparative negligence must be applied); *Woods v. J.R. Liquors, Inc.,* 86 A.D.2d 546, 446 N.Y.S.2d 64, 64 (1982) ("The most serious [error] was the failure in this comparative negligence case to charge that defendants had the burden of proof of showing plaintiff's contributory negligence.").

The trial judge is required to charge the current and correct law. *Brown,* 325 S.C. 547, 481 S.E.2d 444 (Ct.App. 1997). Ordinarily, a trial judge has a duty to give a requested instruction that correctly states the law applicable to the issues and evidence. *Id.* Where a request to charge is timely made and involves a controlling legal principle, a refusal by the trial judge to charge the request constitutes reversible error. *Id.* Moreover, when general instructions to the jury are insufficient to enable the jury to understand fully the law of the case and issues involved, a refusal to give a requested charge is reversible error. *Id.* at 555, 481 S.E.2d at 449 (citing *Jones v. Ridgely Communications, Inc.,* 304 S.C. 452, 405 S.E.2d 402 (1991)); *Burns v. South Carolina Comm'n for the Blind,* 323 S.C. 77, 448 S.E.2d 589 (Ct.App.1994).

Because we conclude comparative negligence is an affirmative defense, the trial court erred in not charging the jury that Paddy had the burden of proving Ross' negligence.

## II. Verdict Form for Comparative Negligence

Ross next asserts error in the trial court's submission of a special verdict form containing interrogatories addressing each of the component parts for recovery. We find this issue to be without merit. The question of whether to grant a party's request to submit to the jury a special verdict form is a matter committed to the sound discretion of the trial court. *Reiland,* 330 S.C. 617, 500 S.E.2d 145 (Ct.App.1998).

### III. New Trial Motion

Ross lastly contends the trial court erred in denying his motion for a new trial because there was no evidence of comparative negligence. Because we hold there was evidence of comparative negligence, this issue is without merit.

For the foregoing reasons, this case is

**REVERSED and REMANDED.**

GOOLSBY and HUFF, JJ., concur.