8947

ANDERSON v. CONWAY LUMBER CO.

(82 S. E. 984.)

MASTER AND SERVANT. NEGLIGENCE. CONTRIBUTORY NEGLIGENCE. ASSUMPTION OF RISKS. EVIDENCE.

1. MASTER AND SERVANT—INJURY TO SERVANT—ACTIONS—JURY QUESTIONS.—In an action for the wrongful death of a servant, the questions whether the injury resulted from defective underpinning, which caused a pile of lumber to fall on deceased, and whether deceased assumed the risk of the injury, *held* properly submitted to the jury.

2. MASTER AND SERVANT—INJURIES TO SERVANT—ASSUMPTION OF RISK.—A servant does not assume the risk of injury from a hidden defect, such as defective underpinning beneath a floor.

3. MASTER AND SERVANT—INJURIES TO SERVANT—EVIDENCE—ADMISSI-
BILITY.—In an action for the wrongful death of a servant killed when
a pile of lumber fell upon him, where it was claimed that the fall of
the pile was caused by the giving away of underpinning beneath the
floor, and defendant introduced evidence that new underpinning had
been placed under the floor before the accident, evidence of repairs
after the accident is admissible.

Before SPAIN, J., Conway, October, 1913. Affirmed.

Action by Leonora Adine Anderson, as administratrix of
Robert Harley Anderson, deceased, against Conway Lum-
ber Company. From judgment for plaintiff, defendant
appeals. The facts are stated in the opinion.

*Messrs. Smythe & Visanska* and *Robt. B. Scarborough,*
for appellant. The former submit: *There must be reason-
ably direct proof that defendant's negligence was proximate·
cause of the injury:* 77 S. W. 67, 70; 84 N. W. 36, 39, 40;
77 N. W. 731; 72 S. C. 398, 404. *Where testimony shows
that the injury may have resulted from one of two causes,
for one of which and not the other, the defendant is liable,
plaintiff must fail in his action:* 203 Fed. 221; 11 N. E.
642; 37 N. W. 182; 31 N. E. 655; 16 S. W. 275; 81 Atl.
267; 77 Atl. 456; 76 S. W. 623; 69 Atl. 207; 48 S. E. 502.
*Master not responsible where servant makes use of appli-
ance in way not contemplated or required by master:* 77
S. C. 328, 335; 20 A. and E. Enc. 141. *Contributory neg-
ligence:* 20 S. C. 219.

*Mr. H. H. Woodward,* for respondent, cites: *As to evi-
dence of changes and repairs after accident:* 29 Cyc. 616,
618. *Same class of testimony introduced by defendant:*
51 S. C. 222; 77 S. C. 73.

September 26, 1914.
The opinion of the Court was delivered by MR. JUSTICE
GAGE.

The plaintiff had a verdict below for $2,730.00, actual damages, for the killing of her husband by the alleged negligence of the defendant.

The defendant appeals, and assigns three errors: (1) That the testimony does not convict defendant of any delict; (2) that the testimony convicts plaintiff's intestate of a delict and that plaintiff's intestate assumed the risk which killed him; (3) that the testimony of plaintiff in reply, as to certain repairs after the event, was incompetent.

The deceased was fifty years old, a carpenter and man of all work about the plant; he had been with the company twelve years.

The accident happened on this wise: There were two decks, sometimes called platforms; one was called the green deck and one was called the dry deck; betwixt these two ran a sunken way on which a car was plied; on the green deck the freshly-sawn boards were piled eight or ten feet high upon trucks, and the load was about eighteen thousand pounds; this loaded truck was pushed down an inclined ironed way to the sunken way, and then rolled upon it, to be carried up or down that way to a proper place on the opposite or dry deck; in this instance the truck had been loaded with green plank ready for transference, but for some reason the men who loaded it and whose business it was to transfer it were not present at the accident; the loaded truck was held in place by three chocks or standards; by the witnesses for both sides, for one witness to the side saw the event, the deceased was working with one or more of the standards which held the loaded truck to its place; the truck moved, the lumber fell from it and killed the deceased; the deceased was at the exact locus by direction of the superintendent, to move two or three inches towards the mill the iron track on which the truck stood, so soon as the truck should be moved off them.

The issue for the jury was, how came the loaded truck to move and the green lumber to fall from it?

The contention of the plaintiff was that the underpinning of the deck where the track stood was unsound; that for that reason the foundation gave way, and the load lost its balance and fell.

There was more than one witness to testify that the underposts were decayed; and the appellant's counsel conceded at the argument that there was such testimony. And the superintendent testified that if the posts were decayed, then the men he had sent there to make repairs were "very derelict in their duty."

The defendant's witnesses swore the posts were sound.

The jury found the facts for the plaintiff; the Circuit Judge refused to disturb the verdict, and thus ends that controversy.

But the defendant further contended in defense (1) that the deceased assumed the risk which hovered there, and (2) that the deceased brought on the fall of the green lumber by his own unauthorized interference with the standards, so that his own act, and it alone, and not the decayed posts, caused the disaster.

These in the inverse order:

1, 2   The superintendent of the plant testified that he directed the deceased to do a particular work on the track where the loaded truck was standing, and the deceased was there to do that work. The work was to move the track a few inches towards the mill.

In the order of business the truck was loaded to be moved along that track to the sunken way, and then to the dry deck. There is no testimony that the removal of it was a hazardous business; there is testimony that the removal was accomplished many times each day, and that the chocks, or standards, were taken out to accomplish the removal; that the track was on an incline, but a pressure of force was necessary to move the loaded truck toward the sunken way.

The witness, Hinson, was the only near eyewitness to the accident; he testified for the plaintiff, and he said the deceased was near one of the standards, pulling it out or putting it in, and that the lumber fell from causes unknown to him.

The other far eyewitness, Faison, testified for the defendant.   He was on the dry deck of the sunken way, fifty yards from the deceased; he testified the deceased had taken out one standard, and was about to remove another when the truck moved forward and the load fell off the truck and killed him.

The testimony shows that the right way to move the truck was to take out the standards.   The issue then was: Did the load fall because the standards were taken out or because the underpinning gave way?

The jury found that issue for the plaintiff.

On the other question—that of assumption of risk—it is sufficient to say, if the rotten timbers caused the accident that was a hidden risk which the deceased did not, of course, assume.

In our judgment the Circuit Judge was right to leave the questions suggested to the jury.

There remains yet to consider the competency of Wright's testimony in reply.   That was strictly to meet the testimony of Ambrose and of Cox.   They testified, in answer, that new posts were put under the deck before the accident; and no repairs were made after the accident.   Wright denied that.

In our opinion the judgment must be affirmed; and it is so ordered.