251 S.C. 56 (1968)
159 S.E.2d 921
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellant,
v.
AMERICAN INSURANCE COMPANY, Melva Elizabeth Culick, Individually and as Temporary Administratrix of the Estate of Nancy May Culick, John D. Culick, Marvin D. Matthews and Marvin F. Matthews, Respondents.
18771
Supreme Court of South Carolina.
March 8, 1968.
*57 Messrs. Bridges, Bridges & Whisenhunt, of Florence, for Appellant.
Messrs. Wright, Scott, Blackwell & Powers, of Florence, for Respondent, American Insurance Company.
Messrs. Nettles, Thomy & Floyd, of Lake City, for Respondents, Marvin D. Matthews and Marvin F. Matthews.
March 8, 1968.
LITTLEJOHN, Justice.
Marvin D. Matthews, while driving a 1955 Plymouth automobile owned by his son, Marvin F. Matthews, was involved in an accident with an automobile operated by Melva Elizabeth Culick and owned by John D. Culick. The plaintiff, St. Paul Fire and marine Insurance Company, had issued a liability insurance policy covering the operation of the Plymouth. The defendant American Insurance Company had issued a liability policy with uninsured motorist provisions covering the automobile owned by Culick.
This action is brought under the declaratory judgment statute for the purpose of having the court determine whether the Plymouth was being driven by Marvin D. Matthews with the consent, express or implied, of its owner, Marvin F. Matthews. Because of the similarity in the names Marvin D. Matthews and Marvin F. Matthews, they will hereinafter be referred to as father and son. If the Plymouth was driven with the consent, express or implied, of its owner, the son, the plaintiff, St. Paul Fire and Marine Insurance Company, will have to defend actions brought by the Culicks against the father; if the Plymouth was driven without the consent, *58 express or implied, of the son, then the claim will have to be pursued by the Culicks against American Insurance Company under the uninsured motorist sections of the policy issued to John D. Culick.
The issues were tried by a jury. At the end of the testimony motion for a directed verdict was made and overruled. The trial judge then submitted to the jury a single question: did Marvin D. Matthews on February 12, 1966, have the consent, express or implied, of Marvin F. Matthews to operate the Plymouth automobile? The jury answered the question "yes." This appeal submits only one question taken from Appellant's brief as follows:
"Was there evidence from which a jury could properly conclude that the defendant Marvin D. Matthews had the permission, expressed or implied, to operate the vehicle of the defendant Marvin F. Matthews at the time of the collision upon which this matter is based?"
The son is forty-six years old and operated an automobile body shop in the town of Lake City. He owned four motor vehicles, including the Plymouth involved in this case, all of which were registered in his name and insured by St. Paul. The father formerly lived in Georgia and moved back to Lake City from Atlanta in 1960. He took up residence in a house just around the corner and described as being within hollering distance and within a stone's throw of his son's home. He had had a Georgia drivers license but was unable to obtain one in this State by reason of his health. The son said he was opposed to his father having a license and had taken steps to see that he did not get one. After moving to Lake City title to the Plymouth was transferred to the son. The transaction was described as a father-son agreement to purchase for $350.00, however neither the father nor the son testified that the money was actually paid and received.
The son testified that after he took title to the car he let it stay at the house of his father and mother practically all the time for the benefit of the two. The mother was a licensed *59 driver and she had express consent to use the car to go to the grocery store, to visit the doctor's office and to visit friends when they wanted to.
It was the son's testimony that he had no knowledge of his father having driven the Plymouth. There were two ignition keys; the son kept one and the mother the other. The father had a key to the trunk of the car where he kept his carpentry tools. The son and the father testified that he was never forbidden to use the car and was never told not to use it, but was told he should not use it.
The evidence shows that the father had occasionally driven the car over to the son's house and had driven the automobile about once a week in the neighborhood to deliver eggs. He had also driven the car to the town of Cowards to visit his sister. The son denied knowledge of these uses by the father prior to the time of the collision, but stated he had since learned of the fact. There is testimony tending to prove that the father had a key made to the car, but he himself, testified he wasn't sure where he got the key.
There is no evidence that the father had express consent to use the Plymouth. It is the contention of counsel for the American Insurance Company that circumstantial evidence relative to the entire relationship of the Matthews creates an inference that consent was impliedly given and that a jury issue was created by such evidence.
It is the contention of counsel for St. Paul that the testimony of the father and of the son completely refutes implied consent to the exclusion of all other reasonable inferences.
Neither the trial judge nor this court is the trier of the facts. Therefore, this court is not called upon to determine whether the father did or did not have consent. The sole question before this court is: does the evidence warrant a finding by the jury that consent was implied; or stated another way: is the finding without evidentiary support? The evidence relied on by American is circumstantial in nature. Any fact in issue may be proved *60 by circumstantial evidence as well as direct evidence, and circumstantial evidence is just as good as direct evidence if it is equally as convincing to the trier of the facts. When an injured person must prove the relationship between the driver and the owner of the car which collided with him, for obvious reasons direct evidence is seldom available. Oftentimes circumstantial evidence is the sole resort of the claimant. The evidence would have certainly warranted a jury finding that consent was not impliedly given. We cannot say as a matter of law that such evidence excluded all other reasonable inferences.
"If evidence * * * though circumstantial, is adequate in scope, credibility, and significance, reasonably to establish the presence of these necessary elements, as against denials or explanations by or in behalf of the owner of the car, the requirements are satisfied, * * *." McCaughey v. Smiddy, 109 Conn. 417, 146 A. 822.
The relationship of the parties may reasonably infer an implied consent which will keep an insurance policy in force for the protection of the motoring public even though the owner denies giving consent. The legislature has by statute required that liability insurance policies contain coverage while a vehicle is operated with the consent of the named insured. Such provision is referred to as the omnibus clause. One of its purposes is to protect any person injured by the operation of an insured vehicle by giving him a cause of action against the insurer for injuries deemed by the law to have been caused by its operation. Such legislation, being remedial in nature, must be liberally interpreted to subserve the clear public policy reflected in the statute to broaden the coverage of automobile liability policies.
Here we have a son living within a stone's throw of his father and providing him and his mother a car for six years. The father kept his carpentry tools in the trunk and the son knew he had a trunk key. He drove the car occasionally to deliver eggs. The father testified "occasionally I would drive it over to his [the son's] house." *61 The jury may easily have found the son's testimony that he did not know of his father operating the car incredible. Certainly the jury was not required to believe the son's testimony under all the circumstances. If the jury believed that the father drove the car as much as he said he drove it, and disbelieved the son when he denied any knowledge of the driving, a finding of implied consent would certainly be warranted.
We cannot say that reasonable men could not disagree as to whether consent was impliedly given and this being true, the issue is one of fact for the jury and the trial judge was correct in so holding. The lower court is
Affirmed.
MOSS, C.J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.