500 S.E.2d 145

**Jeffrey J. REILAND, Respondent,**

v.

**SOUTHLAND EQUIPMENT SERVICE, INC., Appellant.**

No. 2828.

Court of Appeals of South Carolina.

Heard Feb. 3, 1998.

Decided April 20, 1998.

Rehearing Denied June 18, 1998.

---

618

620

622

Steven W. Ouzts, of Turner, Padget, Graham & Laney, Columbia, for appellant.

William P. Walker, Jr., of Walker & Morgan, Lexington, for respondent.

STILWELL, Judge:

Jeffrey J. Reiland commenced this action against Southland Equipment Service, Inc. alleging that its negligent repair of a forklift caused an accident in which Reiland was injured. From a jury verdict in Reiland's favor, Southland appeals, raising seven issues. We affirm.

## FACTS

Reiland was employed by Miller Brothers Giant Tire Service. Miller Brothers sold and serviced tires from 3½ to 30 feet tall. Reiland used a forklift to unload tires from trucks, inspect them and move them around. In order to inspect a tire, it was lifted with the forklift.

In June 1991 Reiland experienced problems with the brakes on the forklift and placed a service call to Southland. Southland worked on the brakes on June 12, 1991. Southland worked on the brakes again on June 19, 1991, after another employee experienced problems with them.

Reiland testified that on the day of the accident, August 23, 1991, he had been operating the forklift about 1½ to 2 hours. He placed a tire weighing approximately 1000 to 1200 pounds on the forklift, lifted the tire off the ground, placed the forklift in neutral, set the hand brake, and walked to the front of the forklift to inspect the tire. Reiland parked the forklift on a "very slight gradual slope" where he had parked before on many occasions.

After two or three minutes, Reiland felt a "bump" on the back of his leg; as he turned, he saw the forklift roll off the paved area onto the gravel and sand and stop on top of his foot and ankle. Reiland fell to the ground. He called for help but got no answer. He was able to pull himself up and release the hand brake, but the forklift did not move because it had sunk into the gravel and sand. Reiland managed to place the

forklift into gear and when it started to roll, the tire spun in the gravel and sand and pulled his foot and ankle into the wheel well, tearing off his shoe and sock. Reiland used one hand to steer and placed the other hand on the gas pedal to drive the forklift into the warehouse where he summoned help.

Reiland testified that the hand brake had worked each time he used it that morning and had not given any indication that it would fail. He was sure he had set the hand brake because he "did it 30 times a day."

Reiland sued Southland alleging Southland's negligence in performing maintenance on the forklift or failure to warn was the proximate cause of his injuries. At trial the jury awarded Reiland $391,300.

Thereafter, Southland filed a motion to re-empanel the jury as it suspected the jury found Reiland to have been more than 50% negligent and thus barred from recovery as a matter of law. Southland also moved the court for an order setting aside the jury verdict and judgment, and to enter judgment for Southland. In response, the court issued an order finding there was "sufficient evidence in the record to sustain the factual findings implicit in the Jury's verdict" and denied Southland's motion for judgment notwithstanding the verdict.

## LAW/ANALYSIS

■ In an action at law on appeal of a case tried by a jury, the jurisdiction of this court extends merely to corrections of errors of law, and a factual finding of the jury will not be disturbed unless a review of the record discloses there is no evidence which reasonably supports the jury's findings. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976).

## I. SUBSEQUENT REMEDIAL MEASURES

### A. Introduction

Southland claims error in the admission of evidence of Southland's repair of the forklift after the accident. We disagree.

In order to be admissible, evidence must be relevant. Rule 402, SCRE. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401 SCRE. Southland does not dispute that the September 9th invoice was relevant. Rather, Southland contends that the September 9th invoice was inadmissible because it was evidence of subsequent remedial repairs offered to prove negligence.

Rule 407, SCRE (adopted effective September 3, 1995),[1] provides:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

### B. Common Law Rule

There is no South Carolina case interpreting Rule 407 since its adoption. There is, however, prior common law in South Carolina applying the general rule against admitting evidence of subsequent repairs or alterations to prove negligence. The United State Supreme Court set forth this rule in *Columbia & P.S.R. Co. v. Hawthorne*, 144 U.S. 202, 12 S.Ct. 591, 36 L.Ed. 405 (1892) (holding evidence that defendant made changes to machine after employee's injury was inadmissible).

South Carolina followed the general rule that evidence of subsequent repairs or alterations is inadmissible to prove negligence. Rule 407, SCRE note (The general rule that evidence of subsequent measures is inadmissible to establish negligence is consistent with South Carolina law.); *Bolen v.*

---

1. Rule 407, SCRE, was identical to the federal rule until the federal rule's recent amendment. *See* Rule 407, FRE (codified 1975 & amended effective Dec. 1, 1997) (amended to apply to products liability actions); *see also* W. Riser, Jr., *A Comparison of the Federal Rules of Evidence with South Carolina Evidence Law* 21 (4th ed. 1990).

*Strange,* 192 S.C. 284, 6 S.E.2d 466 (1939); *Worthy v. Jonesville Oil Mill,* 77 S.C. 69, 57 S.E. 634 (1907).

The South Carolina Supreme Court stated the reason behind excluding such evidence:

> [T]he taking of such precautions against the future is not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant had been negligent before the accident happened, and is calculated to distract the minds of the jury from the real issue, and to create a prejudice against the defendant.

*Worthy,* 77 S.C. at 74, 57 S.E. at 635–36 (quoting *Hawthorne,* 144 U.S. at 207, 12 S.Ct. at 593).

### C. Exceptions to Rule

1. *In General*

■ While not admissible to prove negligence, evidence of subsequent remedial measures is admissible for other purposes:

> such as to rebut or impeach a witness; to explain measurements, maps, photographs, and the like; to show the conditions existing at the time of the accident, to prove the cause of the injury; to establish the defendant's control of the premises or instrumentality involved; and to demonstrate the feasibility of taking certain precautions.

Thomas M. Fleming, Annotation, *Admissibility of Evidence of Repairs, Change of Conditions, or Precautions Taken After Accident—Modern State Cases,* 15 A.L.R.5th 119, 158 (1993).

■ Evidence of subsequent repairs or alterations may be admissible to rebut evidence introduced by the defendant. *Anderson v. Conway Lumber Co.,* 99 S.C. 100, 82 S.E. 984 (1914); *see Worthy,* 77 S.C. at 74, 57 S.E. at 635; David P. Leonard, *The New Wigmore on Evidence* § 2.8.5, at 2:139–40 (Supp.1998) (a common reason to allow evidence of subsequent remedial measures is to rebut defendant's testimony of post-accident conditions).

The supreme court has also allowed evidence of subsequent repairs if it is merely cumulative to evidence introduced by the defendant. *Farley v. Charleston Basket & Veneer Co.,* 51 S.C. 222, 28 S.E. 193 (1897) (2–2 decision) (affirming trial court's

decision to admit evidence that employer placed a protective guard in front of the machine that injured the plaintiff because evidence was cumulative to evidence introduced by the defendant).

## 2. *To Prove Conditions at Time of Accident*

In *Eargle v. Sumter Lighting Co.*, 110 S.C. 560, 96 S.E. 909 (1918), an engineer was electrocuted while working for the defendant. There was no eyewitness to the fatal accident but evidence showed that the deceased came into contact with a charged chain. There was also evidence that the chain gave off sparks prior to the accident. In affirming the trial court's decision to bar evidence of subsequent repairs, the supreme court stated:

> That does not mean that a plaintiff may not show the conditions existing at the time of the accident; and therefore he may show subsequent alterations, in so far as it may be necessary to do so, in order to show that defective conditions existed at the time of the accident.... And where it becomes necessary to show subsequent conditions or alterations for the purpose above stated, the jury may be cautioned that the evidence is not admissible to prove negligence in the condition or appliances existing at the time of the accident.

*Id.* at 568, 96 S.E. at 912; *see Green v. Atlantic Coast Line R.R. Co.*, 136 S.C. 337, 134 S.E. 385 (1926) (holding that where brakeman was injured when knocked off top of train by a tree limb hanging over the railroad tracks, evidence that railroad company cut the tree limb off after the accident was admissible because the brakeman's case depended on establishing the fact that the limb extended over the caboose at the appropriate height to strike him).

The supreme court addressed the issue of whether an automobile recall notice was admissible in *Taylor v. Nix*, 307 S.C. 551, 416 S.E.2d 619 (1992). The Taylors sued the dealer for breach of warranty, strict liability and violation of the Regulation of Manufacturers, Distributors, and Dealers Act, S.C.Code Ann. § 56–15–40(1) (1991) (the Act). The Taylors had taken their car to the dealer to be repaired at least fourteen times over a twenty-six month period. The trial

court permitted the service representative to be questioned regarding the subsequent recall of the car. The jury found for the Taylors and awarded treble damages.

On appeal the supreme court ruled that the testimony regarding the subsequent recall of the car was admissible. The court specifically declined to determine the "broader issue" of whether the subsequent remedial measures rule applied in strict liability cases. It stated, however, that:

> Subsequent remedial measures are generally not admissible to prove negligence.... Although subsequent repairs are inadmissible to show negligence, these measures may be admissible for other purposes. Specifically, subsequent alterations may be admissible to show the defective condition existed at the time alleged.

*Id.* at 558, 416 S.E.2d at 623 (citations omitted) (citing *Eargle,* 110 S.C. 560, 96 S.E. 909).

■ In determining whether to admit evidence of subsequent repairs or modifications, another consideration seems to be whether there is other evidence available to prove what the plaintiff is attempting to prove. *Compare Landry v. Hilton Head Plantation,* 317 S.C. 200, 452 S.E.2d 619 (Ct.App.1994) (affirming trial court's decision to exclude photographic evidence of the hole where plaintiff fell because the hole had been partially filled with gravel since the accident and there was other ample evidence of the hole) *with Plunkett v. Clearwater Bleachery,* 80 S.C. 310, 61 S.E. 431 (1908) (2–2 decision) (affirming in result the trial court's decision to allow evidence that the employer had sanded down a burr on the end of a shaft which had caught the plaintiff's clothing).

### D. Application of the Rule

Southland contends the trial court erred in allowing the introduction of the September 9th invoice for the limited purpose of showing the condition of the forklift at the time of the accident and in failing to strike Reiland's expert witness's testimony regarding the invoice.

### 1. *Evidence at Trial*

To support his claim that Southland negligently repaired the forklift, Reiland presented the testimony of his mechanical

engineering expert, Dr. Bryan Durig. Durig testified that a properly functioning brake system on that forklift when the hand brake was engaged would have held the forklift in place with a 1200–pound tire on the front. Durig said the forklift should have been able to hold up to 6000 pounds on an 18% slope. Durig measured the grade in the area of the accident to be 3.6%.

In forming his opinion, Durig considered three Southland invoices regarding the maintenance and repairs Southland made to the forklift. The invoices listed service dates of June 12, 1991, June 19, 1991 and September 9, 1991. In Durig's opinion Southland performed what amounted to a brake overhaul on the forklift on June 12. He stated that during a brake overhaul the hand brake would need to be disconnected and then reconnected. Durig added that if the brake cable were adjusted during the brake overhaul, the adjustment should have lasted one to two years.

The September 9th invoice clearly showed the brakes and the hand brake cable were adjusted at the same time other maintenance was performed.

Durig testified that, based on information contained in the service manual for the forklift, the parking brakes should not have needed a second adjustment two months after a complete brake overhaul. In Durig's opinion the reason the hand brake cable would have needed to be adjusted on September 9 was most probably because of an improper adjustment on June 12. According to Durig, the September 9th invoice "supports the fact of my opinion that the brakes were improperly adjusted and that they came out two weeks afterward and adjusted the hand brake cable."

Durig also testified that in his opinion if the hand brake cable had been properly adjusted on June 12, the forklift would not have rolled forward. Durig concluded, to a reasonable degree of certainty, the brakes most probably failed because of a defective brake repair job in June. On cross, Durig admitted that if Reiland had failed to pull the brake handle out far enough, the brakes would not have held.

## 2. *Requirements for Exclusion*

■ To be excluded as a subsequent remedial measure the evidence must show that: (1) after an event; (2) measures are

taken which, if taken previously, would have made the event less likely to occur; and (3) are offered to prove negligence or culpable conduct. Rule 407, SCRE.

### a. *After an Event*

■ The "event" referred to is the accident or misadventure. Chronologically, this requirement is clearly met in this case, as the accident occurred on August 23 and the brake adjustment was performed on September 9.

### b. *"Remedial" Measures*

There appears to be no South Carolina case law applying the rule's second requirement that the measures "if taken previously, would have made the event less likely to occur...." Rule 407, SCRE. There seem to be two general views in interpreting this phrase.

The first, more broad, view is that any measure taken after an accident is remedial in nature and would exclude this evidence on most, if not all, grounds. *See Chase v. General Motors Corp.*, 856 F.2d 17, 21 (4th Cir.1988) (to determine if an event is remedial, look to plaintiffs position that if the act complained of had been done earlier it would have made the event less likely to occur); *Reichert v. State, Dep't of Transp. & Dev.*, 674 So.2d 1105 (La.Ct.App.1996), *writ granted*, 679 So.2d 1357 (La.1996), *and aff'd*, 694 So.2d 193 (La.1997), *abrogated on other grounds by Eppinette v. City of Monroe*, 698 So.2d 658 (La.Ct.App.1997) (Prohibition against evidence of subsequent remedial measures to show negligence or culpable conduct is designed to bring within the scope of the rule any change, repair, or precaution subsequent to an accident.).

The second, more narrow, view would allow evidence of subsequent measures unless they were actually "remedial," in the sense of a measure taken in response to the accident. *See Misener v. General Motors*, 924 F.Supp. 130 (D.Utah 1996) (holding design changes to sports utility vehicle admissible because the changes were not remedial measures taken in response to an accident); *The New Wigmore on Evidence* § 2.8, at 2:109 ("Evidence of a subsequent remedial measure is only inadmissible if offered to demonstrate negligence or culpable conduct through the 'recognition of fault' rationale.

As long as the evidence is not offered to show that the repairing party knew or believed that the prior condition was unreasonably dangerous, it will not offend the rule."); 23 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5286, at 130 (1980) ("Any relevant use of such evidence that does not involve an inference as to consciousness of fault on the part of the repairer is permissible."); Wendy Hunkele, Comment, *Admissibility of Subsequent Remedial Measures as Evidence in Texas*, 20 St. Mary's L.J. 121, 123 (1988) (To be a subsequent remedial measure "the action must have been taken in response to the accident.").

Although no South Carolina case has directly ruled on this point, one opinion has addressed, in a footnote, a closely related issue. *See Seaside Resorts v. Club Car*, 308 S.C. 47, 55 n. 2, 416 S.E.2d 655, 661 n. 2 (Ct.App.1992). The court of appeals held portions of a service bulletin were properly admitted as an admission against interest. Even though the bulletin stated that the plug which allegedly caused the fire may have been defective, the court concluded the bulletin was admissible because it did not discuss remedial measures taken after the fire. *Id.*

■ The Southland mechanic that serviced the forklift on September 9 testified that Southland had not received any complaint about the brakes. The mechanic worked on the brakes on September 9 because he felt they needed it to comply with the preventive maintenance schedule. He also testified that in his experience while it is sometimes necessary to adjust the hand brake cable after a brake job, usually no adjustment is necessary.

Rather than a remedial measure, Southland's actions on September 9 appear to be evidence of a routine service call. In fact, we have not found any evidence in the record that Southland's repairs made to the forklift on September 9 were in response to, or in any way prompted by, Reiland's August 23rd accident.

c. *Offered to Prove Negligence or Culpable Conduct*

The third requirement for evidence to be barred under Rule 407 is that the subsequent remedial measure must be offered to prove negligence or culpable conduct. Reiland contends

evidence of the September 9th invoice was offered to show the condition of the forklift at the time of the accident and not to prove Southland's negligence or culpability.

■ Reiland's reason for offering the evidence was valid under the rule. Southland contends, however, that Reiland's reason for offering the evidence was a mere pretext and that Reiland used the September 9th invoice at trial to elicit opinion testimony to show Southland's negligence.

While the September 9th invoice was admitted to show that the forklift was in a defective condition at the time of the accident, Durig used it in part as a basis to form his opinion that Southland was negligent in repairing the forklift before the accident. The fact that the invoice was used as the basis for forming an opinion of Southland's negligence does not, however, bar its admission.

Generally, "[w]hen evidence which is admissible ... for one purpose but not admissible ... for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." Rule 105, SCRE; see Brown v. Orndorff, 309 S.C. 320, 422 S.E.2d 151 (Ct.App.1992) (in an automobile accident case, the trial court's decision to admit evidence of party's driving record for limited purpose of evaluating future work opportunities held proper where jury instructed not to consider it on any issue pertaining to liability).

As has been noted, if the evidence is admitted, the court should give a limiting instruction if the party opposing the evidence requests it. Green, 136 S.C. at 343, 134 S.E. at 386. Here, the trial judge did so. Southland approved of the court's curative instruction at trial and does not contest the trial court's limiting instructions on appeal.

Southland also claims that Reiland impermissibly used the evidence of the subsequent repairs to prove negligence in his closing argument. Southland, however, failed to object to that portion of Reiland's closing argument. See Moore v. Florence Sch. Dist. No. 1, 314 S.C. 335, 444 S.E.2d 498 (1994) (The proper course is to immediately object to an improper argument.).

## E. Analysis Under Rule 403

█ While evidence may be admissible for a limited purpose under Rule 407, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, SCRE; *see* Rule 407, FRE advisory committee's note of 1997 ("Evidence of subsequent measures that is not barred by Rule 407 may still be subject to exclusion on Rule 403 grounds when the dangers of prejudice or confusion substantially outweigh the probative value of the evidence.").

> Because there are so many other purposes for which subsequent repair might be relevant, it has been suggested that the rule seldom requires the court to exclude the evidence. That suggestion is well-placed; in broad categories of cases, as well as in individual instances, the evidence of subsequent repair will be relevant for some purpose other than to prove negligence or culpable conduct. In those situations, it will be admissible for the alternative purposes unless exclusion is required because the evidence poses too great a potential for unfair prejudice.
>
> . . .
>
> As in all cases in which a party offers evidence of limited admissibility, careful balancing—albeit with a decided bias in favor of admissibility—is required.

*The New Wigmore on Evidence* § 2.8, at 2:108, 212 (footnotes omitted); *see* John W. Strong, 2 *McCormick on Evidence* § 267, at 203 (4th ed. 1992) ("The fact that the other purpose is controverted should not be taken as a guarantee of admissibility; the possibility of misuse of the evidence as an admission of fault still requires a balancing of probative value and need against potential prejudice under Rule 403. The availability of other means of proof is an important factor in this balancing process.").

The probative value of evidence of the September 9th invoice is not substantially outweighed by the danger of unfair prejudice to Southland, confusion of the issue, or misleading the jury. The evidence was highly probative on the issue surrounding the condition of the forklift at the time of the

accident and there was little other proof of the condition of the forklift at the time of the accident.

 The conduct of a trial, including admission and rejection of testimony, is largely within the trial judge's sound discretion, the exercise of which will not be disturbed on appeal unless appellant can show abuse of such discretion, commission of legal error in its exercise, and resulting prejudice to appellant's rights. *American Fed. Bank v. Number One Main Joint Venture,* 321 S.C. 169, 467 S.E.2d 439 (1996).

Therefore we hold that the trial court did not abuse its discretion in admitting evidence of the September 9th invoice to prove the conditions of the forklift existing at the time of the accident.

## II. JNOV

 Southland argues it was entitled to judgment notwithstanding the verdict because the evidence, even when viewed in the light most favorable to Reiland, is insufficient to prove that it breached a duty of care. We disagree.

 When reviewing the denial of a motion for JNOV, this court must employ the same standard as the trial court— that is, we must consider the evidence in the light most favorable to the non-moving party. *Brady Dev. Co. v. Town of Hilton Head Island,* 312 S.C. 73, 439 S.E.2d 266 (1993). JNOV should not be granted unless only one reasonable inference can be drawn from the evidence. *Id.* When considering the motion, neither this court nor the trial court has authority to decide credibility issues or to resolve conflicts in the testimony and evidence. *Garrett v. Locke,* 309 S.C. 94, 419 S.E.2d 842 (Ct.App.1992).

 To prevail in an action founded in negligence, the plaintiff must establish three essential elements: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately caused by a breach of duty. *Rickborn v. Liberty Life Ins. Co.,* 321 S.C. 291, 468 S.E.2d 292 (1996). If the plaintiff fails to prove any one of these elements, the action will fail. *Id.* The plaintiffs burden of proof cannot be met by relying on the theory that the thing speaks for itself or that

the very fact of injury indicates a failure to exercise reasonable care. *Snow v. City of Columbia,* 305 S.C. 544, 409 S.E.2d 797 (Ct.App.1991). If the significance of the facts and the inferences to be drawn from them are in dispute, the issue of negligence is for the jury. *Id.*

■ Southland owed Reiland a duty of care in performing repairs and maintenance on the forklift. When a mechanic undertakes to repair a vehicle, the mechanic impliedly assumes a duty to make the repairs in a skillful, careful, diligent, and workmanlike manner. *See Hutson v. Cummins Carolinas, Inc.,* 280 S.C. 552, 314 S.E.2d 19 (Ct.App.1984).

According to Reiland, the day of the accident he used the forklift the way he always did and he was sure he set the hand brake. According to Durig's testimony, there were three possible causes of the accident. The possibilities were: (1) Reiland did not put on the hand brake prior to leaving the forklift; (2) the load the forklift was carrying was too much for the brakes to hold on the slope and grade on which the forklift was located; or (3) the June 1991 repair done by Southland was bad.

■ "Any fact in issue may be proved by circumstantial evidence as well as direct evidence, and circumstantial evidence is just as good as direct evidence if it is equally as convincing to the trier of the facts." *St. Paul Fire & Marine Ins. Co. v. American Ins. Co.,* 251 S.C. 56, 59–60, 159 S.E.2d 921, 923 (1968).

The testimony of Reiland, Durig and Southland's own witnesses was evidence creating a jury question whether Southland's repairs to the forklift were negligent and whether such negligent repairs were the proximate cause of Reiland's injuries. Viewing the evidence in the light most favorable to Reiland, the trial court properly denied Southland's motion for judgment notwithstanding the verdict.

### III. DISCOVERY

■ Southland argues the testimony of Reiland's expert, Dr. William Stewart, should have been stricken because his documents were not produced to Southland before trial. Alternatively, Southland argues the court erred in not granting a

mistrial because Reiland failed to produce the reports and other documents prepared by Stewart when he evaluated Reiland. The trial court found Reiland had not committed any discovery misconduct. We agree.

Stewart was offered by Reiland as an expert in the field of psycho-vocational and rehabilitation evaluation and consultation. After Stewart's examination and out of the hearing of the jury, Southland informed the court that it had not received any of the documents, interviews or reports Stewart referred to during his testimony, despite its requests for production and interrogatories. Reiland's counsel informed the court that he had had only a July 9, 1993 report that was included in Reiland's workers' compensation file that Southland had subpoenaed.

Stewart testified, *in camera,* that he had provided Reiland with only the July 1993 report, and none of his other material had been available to Reiland. He added he does not normally make these available to plaintiffs, but is "routinely asked to supply it if defense counsel takes [his] deposition and requests [his] file." The court had Stewart deliver his file to Southland and recessed court for Southland to review the file. Afterward, Southland moved to strike Stewart's testimony and the court denied the motion.

In order for a party to be required to turn over documents pursuant to a request for production of documents, Rule 34, SCRCP, requires the documents to be "in the possession, custody or control of the party upon whom the request is served." There is no evidence that Reiland received any documents from Stewart other than the July 9, 1993 report that Southland had. Therefore, we agree with the trial court that Reiland did not violate the rules of discovery. Moreover, Southland could have deposed Stewart to gain access to his documents. *See* Rule 30, SCRCP (permitting party to take witness's deposition and serve subpoena duces tecum designating the materials to be produced at the deposition).

## IV. MOTION FOR A CONTINUANCE

Southland challenges the trial court's denial of its motion for a continuance on two separate grounds. First, Southland contends the "sudden and unexpected call of the case for trial

out of order violated Rule 40, SCRCP." Second, Southland asserts that it was forced to go to trial without a material witness.

■ A motion for continuance lies within the trial court's sound discretion, and its ruling will not be reversed without a clear showing of abuse. *McKissick v. J.F. Cleckley & Co.*, 325 S.C. 327, 479 S.E.2d 67 (Ct.App.1996); *see Logan v. Gatti*, 289 S.C. 546, 347 S.E.2d 506 (Ct.App.1986) (applying same rule to a motion for continuance because of the absence of a material witness).

■ On February 28, 1996, the chief administrative trial judge informed the parties they were on the track to be called and set a 30–day deadline during which the parties were to complete discovery. Eventually, the case was listed as number 44 on a trial roster for a three week term of court. On May 1, 1996, the jury roster judge telephoned Southland and Reiland and notified them that the trial was scheduled to begin May 6, 1996. While on the telephone, Southland requested a continuance of the case on the basis of surprise, but the judge denied the request. On May 2, 1996, Southland attempted to subpoena Dr. Guy C. Heyl, an orthopaedic surgeon who treated Reiland, but found he was out of town until May 19, 1996. On May 7, 1996, the day the trial actually began, Southland filed a written motion for a continuance.

While the first twenty cases on the jury trial roster are subject to be called on the first day of the term of court, all cases appearing on the jury trial roster may be called for trial during that term, if given at least 24 hours notice. Rule 40(b), SCRCP. This case was on the trial roster and the parties were given at least five days notice.

■ As to the unavailability of Dr. Heyl, he was not Reiland's primary treating physician and Reiland did not intend to offer him as a witness. Reiland had identified Heyl in response to interrogatories in November 1994. Southland did not depose Dr. Heyl. While the court denied Southland's motion for a continuance, Heyl's report was made a court exhibit to show what his testimony would have been had he been present.

To justify a continuance, the moving party must show not only the absence of some material evidence but also due diligence on his part to obtain it. *Hudson v. Blanton*, 282 S.C. 70, 316 S.E.2d 432 (Ct.App.1984). Southland did not attempt to subpoena Heyl until the day after its oral motion for continuance was denied. Furthermore, Southland did not depose Heyl, even after the court set a 30–day deadline to complete discovery. Clearly, under these circumstances, the trial court did not abuse its discretion in denying Southland's motion for a continuance.

## V. WORKERS' COMPENSATION BENEFITS

Southland contends the court erred in refusing to allow it to impeach Reiland with his workers' compensation benefits after Reiland testified he did not receive any compensation and was responsible for his medical bills. We disagree.

"The amount of compensation paid by the employer or the amount of compensation to which the injured employee or his dependents are entitled shall not be admissible as evidence in any action brought to recover damages." S.C.Code Ann. § 42–1–570 (1976); *see Powers v. Temple*, 250 S.C. 149, 156 S.E.2d 759 (1967) (holding the primary purpose and intent of this rule is to prevent a third party from injecting workers' compensation into a case because the jury should decide the full amount of damages suffered by the employee on account of his injury, notwithstanding any workers' compensation award).

Reiland stipulated there was a $141,000 workers' compensation lien in the case and Southland agreed to the stipulation. Southland wanted to impeach Reiland with two questions: (1) "These medical bills have been paid, have they not?" and (2) "You had income during this time period, did you not?" Southland contends these questions to impeach Reiland are the types of questions permitted by *Rauch v. Zayas*, 284 S.C. 594, 327 S.E.2d 377 (Ct.App.1985).

Here, Southland was attempting to show that Reiland had already received some compensation for his injury. Section 42–1–570 bars such evidence. This situation is different from that found in *Rauch*. In *Rauch*, the plaintiff testified at his 1982 trial that he had suffered continual pain since the dog

bite in 1978. The court permitted evidence that the plaintiff had sustained an injury in 1973 and had settled the 1973 injury case only weeks before the trial on his 1978 injury.

## VI. SPECIAL VERDICT FORM

 At the conclusion of the testimony, Southland moved pursuant to Rule 49, SCRCP, for the trial court to issue a special verdict form that apportioned the degree of negligence. The trial court refused. Southland claims this was error. We disagree.

 The question of whether to grant a party's request to submit to the jury a special verdict form is a matter committed to the sound discretion of the trial court. *See* Rule 49(a), SCRCP (The court *may* require a jury to return only a special verdict.); *Constant v. Spartanburg Steel Prods., Inc.*, 316 S.C. 86, 447 S.E.2d 194 (1994); 9 *Moore's Federal Practice* § 49.11[2][a], at 49–16 (1997) ("Rule 49 is a rule of discretionary implementation, solely in the control of the trial judge. No party has a right to the use of a special verdict."). As we view the record, the evidence sustains the verdict. The court did not abuse its discretion in denying Southland's request.

## VII. JURY INSTRUCTIONS

 Southland contends the trial court erred "by instructing the jury about the legal effect of its findings of comparative negligence." Southland requested the court calculate damages based on the jury's comparative negligence findings and not inform the jury about the consequences of its findings. The trial court denied Southland's request and charged the law of comparative negligence.

 The trial judge is required to charge the current and correct law. *McCourt v. Abernathy*, 318 S.C. 301, 457 S.E.2d 603 (1995).

As a general rule, under a "less than or equal to" comparative negligence rule, determination of respective degrees of negligence attributable to the plaintiff and the defendant presents a question of fact for the jury, at least where conflicting inferences may be drawn. Accordingly, apportionment of negligence, which determines both whether a

plaintiff is barred from recovery or can recover some of his damages and the proportion of damages to which he is entitled, is usually a function of the jury.

*Brown v. Smalls,* 325 S.C. 547, 559, 481 S.E.2d 444, 451 (Ct.App.1997). The trial court properly charged the jury on the law of comparative negligence.

The jury verdict in this case is

**AFFIRMED.**

GOOLSBY and HEARN, JJ., concur.