575 S.E.2d 562

**Joseph IPPOLITO and Marie Ippolito, Respondents,**

**v.**

**HOSPITALITY MANAGEMENT ASSOCIATES and Holiday Inns, Inc., Appellants.**

**No. 3586.**

Court of Appeals of South Carolina.

Heard Nov. 5, 2002.

Decided Jan. 6, 2003.

I. Keith McCarty and Lindsay K. Smith–Yancey, both of Charleston, for Appellants.

M. Anderson Griffith, of Aiken, for Respondent.

HEARN, C.J.:

This is an action in tort for loss of baggage and jewelry by Joseph and Marie Ippolito against Hospitality Management Associates and Holiday Inns, Inc. (collectively "Innkeeper"). The jury awarded the Ippolitos $210,000. After the trial, Innkeeper moved for judgment notwithstanding the verdict and new trial *nisi remittitur*, arguing that its compliance with the South Carolina Innkeeper's Statute either shielded it from liability or limited its liability. Innkeeper also moved for a new trial absolute, contending the trial judge erroneously admitted evidence of past criminal incidents at the hotel. The trial judge denied all three motions, and Innkeeper appeals. We affirm.

## FACTS

While traveling from Florida to Connecticut, Mr. and Mrs. Ipppolito stopped in Walterboro, South Carolina and paid for a room at a Holiday Inn. At the hotel, Mr. Ippolito signed a registration card on which was written, "The management is not responsible for any valuables not secured in safety deposit boxes provided at the front office." In addition to the language on the registration card, notice that the hotel had safety deposit boxes available for guests' valuables was also printed on the pouch that enclosed the key-card to the Ippolitos' room.

After bringing their luggage to the room, the Ippolitos walked to a nearby restaurant, and they returned approximately forty minutes later. Upon their return, they noticed

that pieces of their luggage, which contained jewelry valued at over $500,000 and approximately $8,000 in cash, were missing.

The Ippolitos sued Innkeeper, alleging their property loss resulted from "... the negligence, gross negligence, reckless, willful, wanton and careless action ..." of Innkeeper, including "... failing to post proper notices as required under South Carolina law." In its answer, Innkeeper generally denied the allegations and argued, *inter alia*, that its liability was limited or eliminated because it complied with South Carolina's "Innkeepers' Statute," which limits an innkeeper's liability for guests' loss of property where the Innkeeper provides "conspicuous notice" that safety deposit boxes are available for the guests' use.

At trial, Mrs. Ippolito testified that, prior to the disappearance of their belongings, she looked around the hotel room for notice of the availability of hotel safety deposit boxes for her valuables, but saw no such notice. Mr. Ippolito also testified he did not see any notice of the availability of safety deposit boxes posted in the room; however, he admitted that if such notice was posted, he may have overlooked it. Despite not seeing a notice in the room, Mr. Ippolito testified he was aware that Innkeeper provided safety deposit boxes, but he chose not to request a box from the Innkeeper because "[he] felt that the less anybody knew what [he] had[,] the better." [1]

Innkeeper provided testimony from several of its former and current employees regarding its security procedures and its dedication to adhering to those procedures, particularly for providing guests with notice of the availability of safety deposit boxes. Officer Arthur McTeer Sadler, who investigated the incident, also testified on Innkeeper's behalf, claiming that although he made no mention of it in his incident report, he saw a notice posted on the back of the hotel room door indicating Innkeeper had safety deposit boxes available. A

---

1. In arguing its post trial motions, Innkeeper urged the court to consider Mr. Ippolito's actual knowledge of the availability of safety deposit boxes. However, to fall within the protections of the Innkeeper's Statute, the notice innkeepers post must inform guests that they are *required* to place their jewels and money in the innkeeper's safe. S.C.Code Ann. § 45–1–40 (1976). Here, Mr. Ippolito only admitted to knowing that Innkeeper had a safe available; he did not admit to knowing he was required to place his money and jewelry in that safe.

security expert also testified, saying Innkeeper's level of security at the time of the incident exceeded the industry standard.

On cross-examination of the security expert, the trial judge overruled Innkeeper's objection and allowed opposing counsel to ask whether the expert knew about past security problems at Innkeeper's hotel in which Innkeeper's employees spied on guests through peepholes. The expert replied that he was not aware of those prior incidents.

At the end of the trial, Innkeeper moved for a directed verdict on the grounds that (1) it complied with the South Carolina "Innkeepers' Statute," and (2) it did not fall under an exception to the liability protection afforded by the statute because there was no evidence Innkeeper acted willfully or wantonly. The trial judge granted Innkeeper's motion on willfulness, but denied Innkeeper's motion regarding compliance with the statute.

The jury awarded the Ippolitos $350,000 in actual damages. However, the jury found that the Ippolitos were forty percent comparatively negligent, and reduced the award to $210,000. Innkeeper promptly moved for a judgment notwithstanding the verdict (JNOV), new trial absolute, and new trial *nisi remittitur*. The trial judge denied all three motions, and this appeal follows.

### ISSUES

I. Did the trial judge err in denying the JNOV motion because Innkeeper complied with the statute, thus relieving it from liability for property missing from the Ippolitos' hotel room?

II. Did the trial judge err in denying Innkeeper's new trial *nisi remittitur* motion where no evidence of willful conduct existed?

III. Did the trial judge err in denying Innkeeper's motion for a new trial absolute where the judge admitted evidence of past criminal incidents at the hotel that Innkeeper contends were irrelevant to the Ippolitos' civil action?

## LAW/ANALYSIS

Initially, we note this is a matter of first impression in South Carolina. Although our Innkeeper's Statute has been in place for over a century, until now, no appellate court in our state has interpreted the statute's meaning. S.C.Code Ann. § 45-1-40 (1976).

The first portion of the South Carolina Innkeeper's Statute states that Innkeepers who post a conspicuous notice in guests' rooms requiring guests to lock their doors, leave their keys at the office, and deposit money and jewels in the Innkeeper's safety deposit box are not liable for the loss of any baggage, money, or jewels left in the room. *Id.* Specifically, the statute states:

> Whenever an innkeeper shall post and keep posted in a **conspicuous manner** in the room occupied by any guest a notice requiring such guest to bolt the door of his room, or leaving his room to lock the door and leave the keys at the office, and also to deposit such money and jewels as are not ordinarily carried upon the person in the office safe, and the guest shall neglect to comply with the requirements of such notice, the innkeeper shall not be liable for the loss of any baggage of such guest which may be lost or stolen from his room or for the loss of any money or jewels not deposited in the safe.

*Id.* (emphasis added).

The statute further states that regardless of this exemption from liability provision, even innkeepers who meet the posting requirement will be liable for up to $500 for lost or stolen baggage from the room and up to $2,000 for lost or stolen money and jewelry from the safe if the innkeeper's negligence contributed to the guest's loss. This part of the statute reads as follows:

> Provided, however, that notwithstanding the provisions of this section, any innkeeper who by his own negligence contributes to the loss or damage to baggage or personal property, other than money or jewelry, from guest rooms, or to the loss or damage to money or jewelry from his safe, may be liable to the guest for the actual value of such baggage or personal property or five hundred dollars,

whichever is less, or the actual value of such money or jewelry or two thousand dollars, whichever is less.

*Id.* Accordingly, if an innkeeper fails to post notice, this section is not applicable, and the innkeeper's liability is not limited. Likewise, even if an innkeeper is negligent, so long as the innkeeper properly posts notice, the innkeeper will not be liable for any money or jewelry left in the guest's room. Only when guests abide by the properly posted notice and the innkeeper's negligence contributes to the loss of guest's baggage, jewelry, or money does the innkeeper have this limited liability.

Finally, the statute includes the following language providing no protection from liability when an Innkeeper's willful or wanton conduct contributes to the guest's property loss, even where the Innkeeper complies with the statute's notice requirements:

Provided, however, that, notwithstanding the provisions of this section, any innkeeper who by his own willfulness contributes to the loss or damage to the personal property of a guest shall not have his liability limited in any manner by the provisions of this section.

*Id.*

## I. JNOV Motion

■ Innkeeper first argues the trial court erred in denying its JNOV motion because it complied with the statute's notice requirements, thereby limiting its liability for property missing from the Ippolitos' hotel room. We disagree.

In ruling on a JNOV motion, the trial court must view the evidence and inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motion. *Steinke v. South Carolina Dep't of Labor, Licensing and Regulation,* 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999). The trial court must deny the motion when the evidence yields more than one inference or its inference is in doubt. *Id.* Here, the Ippolitos testified that neither of them saw any conspicuously posted notice in their room indicating that the hotel had safety deposit boxes available in which they could store their valuables. Although testimony from Officer Sadler, as well as several of Innkeeper's current and former employees, contra-

dicts this evidence, the existence of conflicting evidence precludes us from finding as a matter of law that Innkeeper complied with the statute.

## II.  New Trial *Nisi Remittitur* Motion

Innkeeper argues the trial court erred in denying its motion for a new trial *nisi remittitur,* arguing the Ippolitos failed to prove their loss resulted from its willful conduct and that its liability should accordingly be reduced to conform with the statute's limits.  However, we need not reach this issue because the finder of fact implicitly found that Innkeeper failed to comply with the statute's notice requirements.  Thus, Innkeeper cannot avail itself of the statute's protection from liability, regardless of whether its actions contributed to the Ippolitos' loss.

## III.  New Trial Absolute Motion

■  Finally, Innkeeper argues the circuit court erred in denying its motion for a new trial absolute, where the court admitted evidence of past criminal incidents at the hotel that Innkeeper contends were irrelevant to the Ippolitos' civil action.  We disagree.

The admission and rejection of testimony is largely within the trial judge's sound discretion and will not be disturbed on appeal absent appellant's showing that the trial court abused its discretion or its decision was controlled by an error of law. *Reiland v. Southland Equip. Serv., Inc.,* 330 S.C. 617, 634, 500 S.E.2d 145, 154 (Ct.App.1998).  Here, Innkeeper presented evidence concerning the quality of its security practices to refute allegations of negligence.  Significantly, its security expert testified that he found the level of security at the hotel to be "extremely good."  On cross-examination, the Ippolitos sought to question Booth, the security expert, about his knowledge of peephole incidents at the hotel, arguing the past incidents were relevant to the soundness of Innkeeper's security standards and practices.  The trial court allowed the testimony.  The Ippolitos asked Booth two questions regarding whether he learned about the peephole incidents during his investigation of the incident.  Booth answered that he did not.

Because we find the Innkeeper offered evidence concerning the quality of its security, we cannot say as a matter of law that the trial court erred in admitting evidence contradicting this testimony. We find no evidence in the record indicating that Innkeeper suffered any prejudice from the Ippolitos' two questions concerning Booth's knowledge of the peephole incidents or his negative responses. *See Recco Tape & Label Co. v. Barfield,* 312 S.C. 214, 216, 439 S.E.2d 838, 840 (1994) (stating that to warrant reversal based on admission of evidence, an appellant "must show both the error of the ruling of law and resulting prejudice.")  Accordingly, we find the trial court did not err in denying Innkeeper's motion for a new trial absolute. *See Folkens v. Hunt,* 300 S.C. 251, 254–55, 387 S.E.2d 265, 267 (1990) (stating that an appellate court will uphold a trial judge's order granting or denying a new trial unless it is "wholly unsupported by the evidence, or the conclusion reached was controlled by an error of law").

For the foregoing reasons, the trial court's decision is

**AFFIRMED.**

CURETON and ANDERSON, JJ. concur.